## UPTON v. HUGOS *et al.*

1. When the rights of innocent third parties will be prejudiced in no manner, a court of equity will restore the record, and give a first mortgage priority, as between a senior and junior incumbrancer, where it clearly appears that the junior mortgage was taken subject to, and with actual knowledge of, the existence and record of such prior mortgage, when the same has been subsequently discharged of record by mistake and in ignorance of such intervening lien, for the sole purpose of substituting a new mortgage for the amount due, according to the terms of a promissory note to secure which the prior mortgage was executed and delivered.

2. Answers to special interrogatories, submitted to a jury by a court of equity, which are in dirict conflict with the undisputed evidence, should be disregarded, and judgment should be entered upon and in accordance with findings of fact justified and sustained by the evidence submitted at the trial.

(Syllabus by the Court. Opinion filed Oct. 1, 1895.)

Appeal from circuit court, Clark county. Hon. J. O. AN-DREWS, Judge.

Action to foreclose a mortgage. Judgment for defendants, and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*D. C. & W. R. Thomas,* for appellant.

Mergers never take place unless the parties so intend and nothing intervenes to prejudice the new relation. Smith v.

Roberts, 91 N. Y. 470; Franklin v. Hayward, 61 How. Pr. 43; Davis v. Pierce, 10 Minn. 376; Woodward v. Davis, 53 Ia. 694: Boone on Mortgages, 141; Picke v. Gleason, 60 Ia. 150; Lowman v. Lowman, 118 Ill. 582; Beach on Modern Eq. Jr. 450; Pomeroy on Eq. Jr. 246; Aiken v. Railroad, 37 Wis. 469. A mortgage remains a lien on the property even though a release of said mortgage be filed, providing no rights intervened. Boone on mortgages, 155; Tiedman on Real Property, 343; Weir v. Mosher, 19 Wis. 311; Stanley v. Valentine, 79 Ill. 543; Hale v. Morgan, 68 Ill. 244; Wilton v. Mayberry, 75 Wis 191; Stone v. Crow, 2 S. D. 525.

*Seward & Stover*, for respondents.

When there is no defeasance or agreement in writing, evidence to establish that a deed absolute on its face was intended to be a mortgage, or that the real estate described therein belongs in fact to some other person than the grantee must be clear, satisfactory and conclusive and of the strongest possible kind. Ensminger v. Ensminger, 75 Ia. 89; Law v. Graff, 80 Ill. 360; Hancock v. Harper, 86 *Id.* 445; Mathews v. Porter, 16 Fla. 466; Tilden v. Streeter, 45 Mich. 533; Howland v. Blake, 97 U. S. 624.

FULLER, J.   From an examination of the evidence introduced upon the part of plaintiff under his complaint in this action, which is to foreclose a mortgage upon real property, and procure a decree adjudging a certain satisfaction of said mortgage to be void and of no effect because entered by mistake, accident and without authority, the following material facts are disclosed:   The mortgage was executed by the defendants Hugos on the 24th day of July, 1888, and duly recorded, to secure their promissory note to the plaintiff for $700, of even date therewith.   On the 21st day of July, 1889, John C. Hugos mortgaged the same property to the defendant Swenson, to secure a note for $533, and this mortgage immediately went to record.   Plaintiff's agent, with whom all business relating to

the loan was transacted, being unable to collect the interest as it matured, and being obliged to pay the taxes upon the mortgaged premises, apparently from year to year, took a deed on June 4, 1891, to the property as further security for the entire indebtedness; and as a part of the transaction entered into an agreement with the mortgagors, by which they were to devote the proceeds of one-fourth of the annual crops raised upon said land to a reduction of the mortgage and incidental indebtedness, until the amount was reduced to the original $700, when said agent was to reconvey the property to the mortgagors, and thereafter accept interest at 7 per cent, according to the terms of the note by which the loan was evidenced. On the 25th day of August, 1891, nothing having been paid in the meantime, the property was by quitclaim deed reconveyed or released to the mortgagors, and a new mortgage was taken to secure the aggregate indebtedness of the defendants Hugos to plaintiff, which including principal, interest, taxes and expenses, amounted to $1,200. The intention was to have this mortgage take the place of the former mortgage, and represent and stand for the entire amount secured thereby, provided the title to the premises was found to be complete in the mortgagors, subject only to the lien of said mortgage. The avowed object of plaintiff's representative was to obtain paper that was not past due, so that the same could be handled or disposed of in the East. At the same time and for the better security of the $1,200 note, a chattel mortgage was taken upon a two-fifths interest in the crops to be grown upon certain lands during the five succeeding years. At the time of the filing and recording of these mortgages a release of the $700 mortgage was procured from the mortgagee, and forwarded by his agent, C. G. Church, to L. S. Carter, of the Clark County Abstract Company, with express instructions to examine the records, and see that the chain of title was complete, and the $1,200 mortgage a first lien upon the land, before he allowed said release of the $700 mortgage to go to record. Mr. Carter testified as follows: "I found the same number of satisfactions as there were mortgages,

and supposed there was a discharge of the Swenson mortgage. That is, there was the same number of satisfactions as there was mortgages, with the exception of the new mortgage sent to go on. But when I came to continue the abstract, I found there were two satisfactions of one mortgage, and that left the Swenson one not discharged. I then notified Church. In the meantime I had filed this release. I discovered my mistake the next day, I think. * * * I looked up the records before I filed it, but can't say what day it was. I was doing an abstract business, and supposed to understand my business. I mean that there was a mortgage with two satisfactions; that there was the same number of mortgages as there were satisfactions. I looked on the abstract books for the records, and I looked as carefully as I ordinarily do. These two satisfactions and one mortgage is what misled me." On re-direct: "I was president of the Clark County Abstract Company. I wrote the letter marked 'Exhibit 2' in evidence, which reads as follows: 'Clark, S. Dak., Oct. 12th 1891. C. G. Church, Watertown, S. D.—Dear Sir: Yours of the 7th inst at hand regarding John C. Hugos W. $\frac{1}{2}$ N. E. $\frac{1}{4}$ and S. $\frac{1}{2}$ N. W. $\frac{1}{4}$ 33, 1]5, 56. I don't know what to say about it. As I said before, it is a mistake of mine, and I am very sorry it happened. I don't intend anything of the kind to take place again, not as long as I am well enough to tend to business. At the time the papers were received, I was just about sick, and ought to have been home instead of trying to do any work. Your letter of the 7th found me sick abed. Yours, truly, L. S. Carter, Pt."

The undisputed evidence shows, and the court instructed the jury, that no part of the amount evidenced by the $700 mortgage has ever been paid. In fact, it is clear that the Hugoses never paid plaintiff anything upon any indebtedness, and at the trial they offered no defense. Immediately upon obtaining actual knowledge of the existance of the Swenson mortgage, which by reason of the abstractor's mistake in recording the satisfaction of the mortgage for $700, became apparently a superior lien upon the land, plaintiff's agent, for the sole purpose of indemnifying

his principal against any loss which might be sustained by reason thereof, required the defendant Hugos to execute and deliver to him a chattel mortgage for an amount equal to the Swenson mortgage, no part of which has ever been paid. It is very obvious that . from the date of the first mortgage up to the time the case was tried the mortgagors continuously remained in possession of the premises as owners thereof. When defendant Swenson took his mortgage he had both constructive and actual notice of plaintiff's $700 mortgage, and took the same subject thereto; and unless the $1,200 mortgage was taken and accepted in satisfaction of the amount due thereon, and in discharge thereof, merger did not take place, and defendant Swanson was not injured or prejudiced by the new relation, or by the mistake in recording the satisfaction of the old mortgage; and a court of equity would have the power to place the parties in a position where neither would be injured.

From an examination of the entire record, and the undisputed testimony of witnesses, which support and fortify the controlling facts, the substance of which is here produced, we are disposed to conclude that the special findings of the jury are unsupported by the evidence, and that the decree of the court entered thereon, denying the relief for which plaintiff prayed, and dismissing his action, with costs in favor of the defendant Swenson, is contrary to both the law and uncontroverted facts.

Concerning the deed from Hugos to Church, which both intended as a mortgage, the latter testified: "The deed was not made in satisfaction of the indebtedness. There was no money paid to me. This deed was for the benefit of the company, not for my individual benefit. * * * Mr. Hugos has been in possession of the land all the time, as far as I know. * * * He was in default in this $700 mortgage, and as further security I had him deed the land over to me. * * * Mr. Hugos had borrowed money of the company and had never paid a cent of interest, and no taxes from the beginning, and we could not allow it to run in that manner any longer, and he gave us a warranty deed as collat-

eral security to this indebtedness. Then, in order to get the matter so we could handle it East, he gave us the $1,200 mortgage, which was intended to cancel this entire indebtedness; and to take the place of this entire indebtedness; and that was the agreement with Mr. Hugos, but it was contingent upon the title being in him complete. The transaction was never closed on that account." Defendant John C. Hugos testified in part as follows: "It was the understanding between me and Church, if I gave him the deed, I should live on the farm and work it. I was to pay interest on the $700 mortgage. * * * At the time I gave the deed to Church it was arranged that when I should reduce the obligation to $700, the original loan, Mr. Church was to give me a deed at the usual interest. * * * Church was not to take the land, and call it square, and let me off. He was not to take the land and release me from the $700 debt." The undisputed evidence conclusively shows that both parties intended that the deed should operate as a mortgage for the better security of the amount due plaintiff, according to the terms of the mortgage given to secure the $700 note, which at the time aggregated nearly $1,200. Neither party for a moment intended that the $700 mortgage should be otherwise delivered up as a satisfaction until the debt was paid, and the relation of debtor and creditor existed after the execution of the deed precisely as before, and so existed at the time the case was tried. It is not claimed that the defendant Swenson was deprived of any just right by the inadvertant discharge of plaintiff's unsatisfied mortgage; and although, as a junior mortgagor, he gained thereby an apparent advantage, it would be inequitable to hold that plaintiff is without redress. The $1,200 mortgage covered the entire indebtedness growing out of the original $700 loan, and was taken and accepted in settlement thereof, upon the express condition that the land was otherwise free from incumbrance. The condition being found not to exist, such mortgage was not relied upon as operative. As the defendant John C. Hugos did not dispose of, nor intend to part with, his estate in the land by the execution

of the deed to Church, taken as collateral security, and is still the equitable owner of the premises, the mortgage lien was not thereby merged in the legal title, and defendant Swenson is still a junior incumbrancer. Courts of equity will, in a case like the present, keep an incumbrancer alive in accordance with the manifest intention of the parties, when it can be done without injury to innocent third persons. "When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released by mistake may be restored in equity, and given its original priority as a lien, where the rights of innocent third parties will not be affected." Sidener v. Pavey, 77 Ind. 241.

In response to questions submitted by the court to the jury, it made and returned special findings that "there was nothing due between the parties; that the deed to Church extinguished the debt, that Swenson had actual notice of plaintiff's mortgage, that no mistake in filing lease was made; that Hugos has been in actual possession of the land since 1888, but not as owner all the time; that there was an agreement by which Hugos was to transfer the land, and all the debt discharged. The above findings, except as to the continuous possession of Hugos, and Swenson's actual knowledge of. the $700 mortgage, are contrary to the undisputed evidence, and should have been disregarded.

A motion for judgment in plaintiff's favor, notwithstanding the findings, was, in our opinion, improperly overruled. The case involves the application of a rule of equity so familiar that citation of authorities or further discussion would be seviceable to none. The judgment of the trial court is reversed, and a new trial ordered.