## THE LOMAS AND NETTLETON COMPANY *vs.* HERMAN ISACS ET AL.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and BANKS, Js.

The plaintiff, having commenced an action to foreclose a first mortgage in which it was named as trustee for the holders of twenty notes for $500 each, withdrew the proceedings and released its mortgage in consideration of the execution of a new mortgage and new notes in the same principal sum, but bearing a higher rate of interest, and in further consideration of the payment of taxes, legal expenses and a commission or bonus by the second mortgagees who, at the same time, released their mortgage and accepted a quitclaim deed from the owner of the equity under an agreement to hold the title as security only for their debt. Thereafter, the plaintiff and the second mortgagees learned for the first time of the existence of a duly recorded third mortgage to the defendant Isacs, who then claimed to have been advanced to the position of first mortgagee; whereupon the plaintiff brought this suit to obtain the reinstatement of its original mortgage as security for the original indebtedness, and the second mortgagees, as parties defendant, claimed similar relief by cross-complaint. *Held:*—

1. That the doctrine of constructive notice afforded by the land records did not apply to this transaction, which did not really involve the creation of new liens or incumbrances, but merely carried out the obvious intention of the parties in the renewal or continuation of existing securities for the original indebtedness; and therefore it would be inequitable to permit the defendant Isacs to derive an advantage from a mere specious or colorable change in the situation.
2. That the identity of the indebtedness secured by the plaintiff's original mortgage was not changed by the increase in the rate of interest, or by the fact that the first series of notes was repurchased from the holders by the plaintiff and the new notes sold to other parties.
3. That the second mortgagees were entitled to a reinstatement of their mortgage as security, only for the original indebtedness, and not, as ruled by the trial court, for that amount plus the sum expended by them for taxes, etc.
4. That the plaintiff, as a condition of securing the aid of a court of equity, must itself do equity by returning to the second mortgagees the commission or bonus which it had charged for renewing its mortgage.

Argued November 11th—decided December 12th, 1924.

SUIT to obtain a reinstatement of a first mortgage released by the plaintiff under an alleged mistake respecting the existence of a third mortgage upon the property, brought to the Superior Court in Fairfield County where a demurrer to the complaint filed by the defendant Isacs, the third mortgagee, was overruled (*Haines, J.*), and the cause was afterward tried to the court, *Kellogg, J.;* facts found and judgment rendered for the plaintiff against all the defendants, and for the defendants Samuel W. and Francis E. Beach, the second mortgagees, upon their counterclaim seeking the reinstatement of their mortgage, against the other defendants, from which the defendant Isacs appealed. *Error in part.*

On September 23d, 1919, Olaf Christensen and Morris Krentzman gave to the Lomas & Nettleton Company, trustee, a mortgage upon a certain tract of land owned by them in the town of Stratford, as security for an indebtedness of $10,000 evidenced by twenty notes of $500 each, payable three years after date with interest at six per cent. On the same day Christensen and Krentzman gave to the defendants Samuel W. Beach and Francis E. Beach a mortgage upon the same premises to secure an indebtedness of $4,100, which mortgage was subsequent to that given to the Lomas & Nettleton Company, trustee. On November 22d, 1919, Christensen and Krentzman gave to the defendant Herman Isacs, a mortgage upon the same premises to secure an indebtedness of $4,400, which mortgage was subsequent to the mortgages to the Lomas & Nettleton Company, trustee, and to Samuel W. and Francis E. Beach. All of these mortgages were duly recorded.

On November 23d, 1922, the Lomas & Nettleton Company, trustee, commenced an action against Christensen and Krentzman and against Samuel W.

and Francis E. Beach to foreclose the mortgage held by it as trustee, the notes having fallen due and being unpaid.  On December 4th, 1922, the Lomas & Nettleton Company as trustee, agreed with Christensen and Krentzman to withdraw the foreclosure action and renew the mortgage loan of $10,000, upon condition that the latter would pay the expenses of the foreclosure action, arrears of interest, taxes and liens for public improvements outstanding against the property and the usual expenses and commission for renewal, and upon the further condition that they thereafter should pay interest upon the mortgage indebtedness at the rate of six and one-half per centum instead of six per centum as theretofore.  Upon the same day the defendants Beach agreed to advance to Christensen and Krentzman the further sum of $2,492.87, to be applied, and which was applied, to discharge arrears of interest, taxes, expenses of foreclosure and the customary commission and expenses charged by the Lomas & Nettleton Company upon mortgage renewal. It was further agreed that the plaintiff and the defendants Beach should release their respective mortgages upon the property, that Christensen and Krentzman should give to the plaintiff as trustee, a new mortgage which should be a first lien to secure the indebtedness of $10,000 and that they should convey the equity in the property to the defendants Beach to be held by them as security for their original indebtedness and for the advancement to be made by them as agreed.

On the same day the plaintiff withdrew its foreclosure action and released its original mortgage, and Christensen and Krentzman executed and delivered to it a new mortgage for $10,000.  On the same day the defendants Beach also released their mortgage and Christensen and Krentzman conveyed the mortgaged premises to

them by quitclaim deed, which was duly recorded together with a written memorandum of the agreement setting forth that they held the property as security for the payment by Christensen and Krentzman to them of the amount due them as above stated. When the plaintiff and the defendants Beach released their respective mortgages neither of them had actual knowledge of the existence of the Isacs mortgage and the sole purpose of the transaction recited was to enable Christensen and Krentzman to renew their mortgage to the plaintiff. The notes evidencing the original indebtedness by Christensen and Krentzman to the plaintiff were sold by it, but at the time of the release of its mortgage and the execution of the new mortgage, they had been repurchased by the plaintiff and were then held by it. New notes were executed under date of December 4th, 1922, and the notes originally issued and repurchased were cancelled, but no part of the indebtedness evidenced thereby was paid excepting one note of $500, nor was it understood between the parties that they should be paid other than by the notes under date of December 4th, 1922. The notes of December 4th, 1922, were subsequently sold by the Lomas & Nettleton Company, and at the time this action was brought were held by persons other than those who held the notes of September 23d, 1919. The court granted the prayers of the plaintiff and of the defendants Beach that their original mortgages be reinstated as prior liens to the mortgage of the defendant Isacs, and the latter appealed.

*Thomas M. Cullinan,* with whom was *Louis A. Kornblut,* for the appellant (defendant Isacs).

*William H. Comley,* with whom was *Paul S. Chapman,* for the appellee (plaintiff).

*Samuel F. Beardsley*, for the appellees (defendants Samuel W. and Francis E. Beach).

BANKS, J. The plaintiff is not described in the writ as acting in a representative capacity, but throughout the pleadings and in the finding it is described as "The Lomas & Nettleton Company, Trustee." Inasmuch as the judgment finds the issues for the plaintiff and reinstates the original mortgage given "to the plaintiff," and the complaint alleges that the mortgage was given to the Lomas & Nettleton Company, trustee, which allegation is admitted in the answer, the judgment must be held to be in favor of the Lomas & Nettleton Company as trustee. No question was raised in the proceedings before trial, upon the trial, or in the appeal as to the representative capacity in which the plaintiff was acting in bringing this action.

One of the grounds of demurrer to the complaint, the overruling of which is made one of the reasons of appeal, is that the mortgage of the appellant, Isacs, was duly recorded and that the plaintiff and the holders of the notes secured by the mortgage of December 4th, 1922, had constructive notice of its existence.

It appears that the sole purpose of the plaintiff in releasing its mortgage was to enable the mortgagors, Christensen and Krentzman, to renew the mortgage loan then past due. The debt was not paid nor was there any intention that it should be paid at that time; on the contrary, the agreement of the parties was for an extension of time for the payment of the indebtedness upon condition that the mortgagors pay up certain arrears of interest, taxes and liens for public improvements, and thereafter pay interest upon the loan at the rate of six and one half per centum instead of six per centum as theretofore. The execution of this agreement took the form of a release of the old mortgage

and the giving of a new one of the same amount, but with different terms as to the time of payment of the notes, and an increase in the rate of interest. The release of the old mortgage and the giving of the new were done at the same time as part of the same transaction, with the understanding that the new mortgage was simply an extension of the old, and like it, a first lien upon the property. Of the existence of the Isacs mortgage the plaintiff had no actual knowledge; nor as regards the security of its existing mortgage did it have constructive knowledge of it. The effect of the transaction was merely to continue plaintiff's original mortgage. The release of the old and the execution of the new were practically simultaneous, and constituted not an extinguishment of the old mortgage, but simply a renewal of it. The plaintiff was not therefore in the position of one taking a new mortgage upon the premises who would be charged with knowledge of all that the record disclosed. If it had by mistake released its mortgage without intending to do so, as for instance, by executing a release supposing that it had a paper of a different character, or that the release executed was that of a mortgage upon a different piece of property, there can be no doubt that equity, upon the satisfactory proof that it requires in such case, would relieve the plaintiff from the result of such action and reinstate the mortgage which had been discharged by mistake. Equity always looks to the substance and not to the form of the transaction. There being no intention to release the lien of the first mortgage, its actual release for a momentary period should not in equity permit a subsequent lienor to intervene and acquire priority. That equity will act to prevent such a result is clearly established by the great weight of authority.

"Entering satisfaction of a mortgage and taking a

new one, when designed by the parties to be merely the continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially when it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage." 27 Cyc. p. 1222.

"One of the most common mistakes connected with releases of mortgages is when the mortgage is renewed and the prior lien released in ignorance of intervening rights. Ignorance in such a case is regarded in equity as equivalent to a mistake, and relief will be granted when there is no other element of estoppel, and when the party seeking relief has not delayed action." 19 R. C. L. p. 469. "When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien." 2 Jones on Mortgages (7th Ed.) § 971. The following are some of the cases in which equity has granted relief under such circumstances: *Hammond* v. *Barker*, 61 N. H. 53; *Pearce* v. *Buell*, 22 Ore. 29, 29 Pac. 78; *Upton* v. *Hugos*, 7 S. D. 476, 64 N. W. 523; *Wooster* v. *Cavender*, 54 Ark. 153, 15 S. W. 192; *Seeley* v. *Bacon*, 34 Atl. (N. J.) 139; *Bruse* v. *Nelson*, 35 Iowa, 157; *Cobb* v. *Dyer*, 69 Me. 494; *Campbell* v. *Trotter*, 100 Ill. 281; *McKenzie* v. *McKenzie*, 52 Vt. 271; *Barnes* v. *Camack*, 1 Barb. (N. Y.) 392; *Young* v. *Shaner*, 73 Iowa, 555, 35 N. W. 629; *Shaver* v. *Williams*, 87 Ill. 469.

We have upheld the power of a court of equity to grant relief from the consequences of an innocent mistake although the mistake was not unmixed with negligence (*Fountain Co.* v. *Stein*, 97 Conn. 619, 626,

118 Atl. 47), and although it was a mistake of law (*Bronson* v. *Leibold,* 87 Conn. 293, 87 Atl. 979), where the failure to do so would allow one to enrich himself unjustly at the expense of another.

The defendant Isacs is not in a position to take advantage of this mistake of the plaintiff's, whether it be considered a mistake of law or of fact. Unless the mistake is rectified, Isacs will obtain an unconscionable advantage. The correction of the mistake will leave him in his original position and deprive him of no right to which he is justly entitled.

At the time of the execution of the notes and mortgage of December 4th, 1922, the notes evidencing the debt under the mortgage of September 23d, 1919, had been repurchased by the plaintiff and were then held by it. Upon the execution of the new notes of December 4th, 1922, the original notes so repurchased were cancelled, and prior to the bringing of this action, the plaintiff had sold the new notes to various persons other than the holders of the original notes. It is the claim of the defendant Isacs that this was in effect a payment of the debt secured by the mortgage of September 23d, 1919, by the holders of the new notes of December 4th, 1922, and that the holders of these notes (the real plaintiffs in this action) are not by such payment subrogated to the rights of the owners of the original notes. Whether they would be subrogated to such rights under such circumstances it is not necessary for us to decide since, as we view the transaction, the original mortgage debt has never been paid. The trial court has so found as a question of fact, and its finding logically follows from the subordinate facts found. The original notes sold by the plaintiff and repurchased by it were held by it at the time the new notes were given, so that the real transaction was that the plaintiff, who held and owned the notes evidencing the mortgage

debt, cancelled them and received in their place from the debtor new notes for the same amount, which extended the time for the payment of the indebtedness. That these new notes subsequently came into the hands of other parties does not change the identity of the debt nor the rights of the plaintiff as they existed at the time that it released its original mortgage. No change in the form of the indebtedness or in the mode or time of payment will discharge the mortgage. *Bolles* v. *Chauncey*, 8 Conn. 389; *Greist* v. *Gowdy*, 81 Conn. 351, 354, 71 Atl. 555. So long as the debt remains in any form, a court of equity will keep the incumbrance alive if that course will best serve the purposes of justice and carry out the actual intention of the parties. 2 Jones on Mortgages (7th Ed.) § 926.

The intention of the parties is the controlling consideration, and it is apparent from the finding that the parties intended that the plaintiff should continue to have a first lien upon the premises to secure the indebtedness of $10,000. It was only in a purely technical sense that the first mortgage was discharged of record and there can be no question as to the power and duty of a court of equity under such circumstances to lend its aid in effectuating the real intention of the parties, when that can be done without affecting in any way the rights of third parties. In *Lewis* v. *Hinman*, 56 Conn. 55, 13 Atl. 143, this court held that where a third mortgagee paid a first mortgage in ignorance of the existence of a second mortgage on the property, there was a merger, when there was an actual intent to pay the first mortgage and to have it discharged. We have no occasion to consider the doctrine which appears to have been decided in that case. Here, as we have seen, there was no payment of the first mortgage, and no intent to discharge it, but, on the contrary, the intention of all parties was to keep it alive.

The appellant also claims that the fact that the new notes bore a different rate of interest and matured at different periods than the notes secured by the original mortgage, established as a matter of law that the parties intended a new, independent loan and the relinquishment of the priority of the original mortgage. This change in the terms of the notes was but one of the facts to be considered by the trial court in determining the actual intention of the parties. As we have seen, the court has found as a fact that the parties intended merely an extension of the original loan, and the change in the terms of the new notes is in no way inconsistent with such finding. It is of course obvious that an extension of the loan would involve a change in the maturity dates of the notes, and a change in the rate of interest does not change the identity of the debt. The judgment reinstates the original mortgage with interest limited to six per centum per annum so that it does not subject the Isacs mortgage to the priority of any greater interest charge.

The release of the mortgage of the defendants Beach was given under the same circumstances as that of the plaintiff's mortgage, and for the sole purpose of permitting the plaintiff's renewal mortgage to become a first lien upon the premises, and the same equitable principles govern the right of these defendants to the relief sought in their counterclaim. The conveyance to them of the equity with the agreement that the legal title was to be held by them as security, constituted an equitable mortgage which these defendants took in substitution for their original mortgage. There was no payment of the mortgage debt nor any intention to discharge the mortgage. There was therefore no merger of the mortgage with the equity of redemption. 2 Jones on Mortgages (7th Ed.) § 848.

The defendants Beach, at the time they released

their mortgage, advanced to Christensen and Krentz-
man the sum of $2,492.87, which was applied to dis-
charge arrears of interest, taxes, expenses of foreclosure
and commission and expenses of the plaintiff upon the
renewal of its mortgage. In its judgment the trial
court decreed that the mortgage of these defendants
be reinstated and declared to be a valid and outstanding
lien for the original mortgage indebtedness "including
such sums as have been advanced by said Samuel W.
Beach and Francis E. Beach on account of prior liens."
The decree thus reinstated the Beach mortgage and
declared it to be a valid and outstanding lien prior to
that of the Isacs mortgage for an amount substantially
in excess of the original indebtedness. We think the
court had no power thus to increase the amount of
liens upon the property prior to the Isacs mortgage.
The relief granted to the plaintiff and the defendants
Beach was granted upon the theory that by mistake
they had lost a valuable property right and were en-
titled in equity to be restored to their original position,
which could be done without affecting in any way the
rights of the defendant Isacs whose mortgage was
subsequent to theirs. The judgment goes beyond this
and places upon the property an additional lien prior
to that of the Isacs mortgage. Our statute provides
that premiums of insurance, taxes and assessments
paid by the mortgagee and payments of interest on a
prior mortgage shall be a part of the mortgage debt
and be refunded to the mortgagee before he is required
to release his title. While it is true that this sum of
$2,492.87 was in part applied to the payment of arrears
of interest upon the first mortgage and other liens which
by the statute are made a part of the mortgage debt
when paid by the mortgagee, still this sum constituted
an additional loan made by the defendants Beach to
the mortgagors and the effect of the court's judgment

is to place an additional incumbrance upon the property having priority to that of the Isacs mortgage.

Upon foreclosure of their original mortgage the defendants Beach may claim as part of the mortgage debt such payments as they have made under the statute. The prayer of the defendants Beach for relief by foreclosure was waived without prejudice and we think that the extent of the relief to which they were entitled in this action was the reinstatement of their mortgage in its original amount of $4,100. It is questionable whether any of the reasons of appeal clearly raises the point as to the validity of this portion of the judgment in favor of the defendants Beach, but equitable considerations require that we take cognizance of it.

It appears that a portion of the $2,492.87 advanced by the defendants Beach to Christensen and Krentzman was paid to the plaintiff to cover the commission charged by it upon the renewal of its mortgage loan. In the judgment rendered by the trial court this sum was included in the indebtedness secured by the Beach mortgage which was reinstated as a valid lien prior to that of the appellant. As a result of our modification of that judgment, the defendants Beach have no security for the amount so advanced and the plaintiff has received a fund which in justice and equity it is not, as against the defendants Beach, entitled to retain. The plaintiff in this action is seeking the aid of a court of equity and, as a condition of receiving such aid, it must itself do equity. The reinstatement of its mortgage as a first lien upon the property should therefore be upon the condition that it repay to the defendants Beach the commission paid by them.

There is error in part; the judgment is set aside and the cause remanded with direction to enter judgment reinstating the plaintiff's mortgage upon its payment

to the defendants Beach of the sums advanced by them to cover the plaintiff's commission upon the renewal of the mortgage, and reinstating the mortgage of the defendants Beach as a valid mortgage for the original indebtedness secured thereby, or so much thereof as remains unpaid.

In this opinion the other judges concurred.