[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The plaintiff brings this action seeking to foreclose his mortgage on property owned by the defendant John J. Wellner, Jr. and known as 1845 Bronson Road, Fairfield (sometimes hereinafter referred to as the "Property.") The plaintiff contends that his mortgage is first in priority and that the mortgage of the defendant Bank of Boston Connecticut (the "Bank") is subsequent in right to the plaintiff's mortgage. The Bank contends, however, that under the doctrine of equitable subordination, the Bank's mortgage should have priority over the plaintiff's mortgage.
Wellner became indebted to Haydu on July 7, 1988 when Wellner purchased from Haydu property located on Cobblers Hill Road in Fairfield. Wellner gave Haydu a note and a first mortgage on the Cobblers Hill Road property to secure the purchase price of $174,000.
Later in that same month of July 1988, Wellner wanted to mortgage the Cobblers Hill Road property to Bank Mart to secure a $200,000. loan. Bank Mart required a first mortgage and Haydu signed a subordination agreement subordinating his mortgage to the new Bank Mart mortgage. In consideration for Haydu's agreement to subordinate his mortgage on the Cobblers Hill property, Wellner gave Haydu an additional mortgage on the CT Page 4751 Bronson Road property as additional security for the $174,000. debt. The new mortgage on the Bronson Road property, which is the mortgage giving rise to this foreclosure action, stated that it was "subject to prior mortgages as of record appear." This new mortgage on the Bronson Road property was third in priority, behind a $93,750. mortgage to Exxon Corporation and a mortgage to the Bank which secured a 1988 $500,000. commercial revolving loan (the "1988 mortgage.")
In July, 1990 Wellner wanted to sell the Cobblers Hill Road property. He sought a release of Haydu's mortgage on that property. Haydu had his attorney, Frank Ober, run down the title to the Bronson Road property. The run down revealed that Haydu now held a first mortgage on the Bronson Road property as a result of the recording of a release of the Exxon Mortgage in 1988 and a release of the 1988 mortgage, which was recorded on July 5, 1989. After determining that the plaintiff now had first priority on the Bronson Road property, Ober prepared a release of the Haydu mortgage on the Cobblers Hill Road property. Haydu furnished the release for the closing of the sale of the Cobblers Hill Road property. Although the closing proceeds would have been sufficient to pay the balance due on Haydu's note for $174,000., no payment was made on the note. Thereafter, the note was secured only by the mortgage on the Bronson Road property, which, according to the land records, had become a first mortgage. (Many of these facts are taken from the affidavit of Attorney Fritz Ober, which the parties agreed should be considered by the court as a full exhibit.)
The Bank's claim of equitable subordination arises out of the fact that immediately after recording the release of the 1988 mortgage, the Bank recorded a new mortgage securing another $500,000. commercial revolving loan to Wellner (the "1989 mortgage.") The Bank officer who handled the transaction testified that he executed the release of mortgage and it was recorded in the belief that the Bank would continue to have a first priority on the Property by recording the 1989 mortgage immediately after the release of the 1988 mortgage.
The closing of the 1989 commercial revolving loan between Wellner and the Bank occurred on June 30, 1989. The Bank asked Wellner's attorney, John Betar, to provide the Bank with a title insurance policy insuring the validity and priority of the 1989 mortgage. Betar did so and also provided his opinion letter that the Property was free of encumbrances except as shown in CT Page 4752 the title insurance policy, which showed no prior or subsequent liens on the Bronson Road property.
The Bank contends that it issued the release of the 1988 mortgage without knowledge of the plaintiff's mortgage, which gained a first priority immediately upon the recording of the release. The plaintiff claims that the Bank had constructive notice of the plaintiff's mortgage because it was properly and openly recorded in the Fairfield Land Records.
Our Connecticut Supreme Court has recognized that "[o]ne of the most common mistakes connected with releases of mortgages occurs when the mortgage is renewed and the prior lien is released in ignorance of intervening rights." [ConnecticutNational Bank v. Chapman], 153 Conn. 393, 397 (1966). There is no question that in many such instances our courts have granted equitable relief to preserve the original priority of the released mortgage. See, e.g., [Lomas Nettleton Co. v.Isacs'] 101 Conn. 614, 619 (1924). The oft-cited rule requires, however, that the court determine whether the intervening claimant would be prejudiced.
 There being no intention to release a first mortgage lien, its actual release for a momentary period should not in equity permit a subsequent lienor, [who has not been prejudiced thereby], to intervene and acquire priority.
[Connecticut National Bank v. Chapman], supra at 397. (Emphasis added.)
 If the circumstances show that there was no intent that the lien should be lost by the release of the original mortgage, [and if the intervening lienholder has not been prejudiced by any change in his status because of reliance on the release], as in the instant case, relief should be granted.
Id. at 399, (emphasis added), citing 2 Pomeroy, Equity Jurisprudence (5th Ed.), p. 1046 n. 14.
The issue before this court is whether the plaintiff Haydu would be prejudiced if the court were to uphold the Bank's claim CT Page 4753 that its 1989 mortgage should have first priority, as the Bank's 1988 mortgage did. The answer quite clearly is "yes." The prejudice is shown in two different respects.
The first relates to the plaintiff's release of his second mortgage on the Cobblers Hill Road property. It must be remembered that at the time the plaintiff took a third mortgage on the Bronson Road property he was also secured by a mortgage on the Cobblers Hill Road property. The plaintiff agreed to subordinate his Cobblers Hill mortgage to a new first mortgage on that property because he was given the additional collateral of a third position on the Bronson Road property. In 1990 when the defendant Wellner sold the Cobblers Hill property, Haydu released his mortgage without any payment, although the closing proceeds would have been sufficient to pay off the mortgage note. The reason the plaintiff did so was his reliance on the fact that his mortgage on the Bronson Road property was now in first position. Unlike the intervening lienholder in the [Chapman] case and as cited in Pomeroy, the plaintiff here relied on the release of the Bank's 1988 mortgage when he released other collateral without payment. As a result, he would be prejudiced if the court were now to grant priority to the Bank's 1989 mortgage.
The second aspect of prejudice to the plaintiff arises out of the amount of the debt claimed by the Bank. In the allegations of its first special defense, the Bank admits that the principal balance of the 1988 mortgage when it was released was $300,000. However, an officer of the Bank testified that the current principal balance on the 1989 mortgage is $500,000. To give priority to the Bank's 1989 mortgage under these circumstances would substantially impair the plaintiff's position and priority from what it was just prior to the Bank's release of the 1988 mortgage. At that time, plaintiff's mortgage was second in priority to the 1988 mortgage with a principal balance of $300,000. To give the Bank priority now for its 1989 mortgage would put plaintiff's mortgage second to a mortgage with a principal balance of $500,000.
Because of the clear prejudice to the plaintiff which would result if the court were to order the subordination of plaintiff's mortgage to the Bank's 1989 mortgage, the court declines to exercise its equitable powers. The court finds for the plaintiff on the Bank's special defense. The plaintiff's mortgage shall retain its record priority over the Bank's 1989 CT Page 4754 mortgage.
In order to take this case to judgment, the plaintiff shall file a motion for judgment to be heard on the regular foreclosure calendar. (Although the parties had contemplated that the undersigned would enter a foreclosure judgment, much of the necessary information, such as the current balance due on the plaintiff's debt, the fair market value of the premises, etc., was not provided to the court.)
CHRISTINE S. VERTEFEUILLE, JUDGE