STATE OF CONNECTICUT *v.* JOHN J. RILEY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 13-836

Argued June 21—decided October 29, 1962

*William F. Mangan, Jr.,* for the appellant (defendant).

*Seymour A. Rothenberg,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was found guilty of the crime of operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227 of the General Statutes, in a trial to the court and has appealed. His assignment of errors is based on a denial of requested changes in the finding, on the conclusions of the court as being

unsupported by the subordinate facts, and on the conclusion that upon all the evidence the defendant was guilty beyond a reasonable doubt. The defendant neither took the stand nor offered any evidence on his own behalf.

The finding of the court, together with such minor corrections as are warranted, discloses the following facts: On June 14, 1961, at approximately 3:20 a.m., the defendant was operating a car in a southerly direction on Enfield Street (route 5) in the town of Enfield. Enfield Street in the area runs in a northerly-southerly direction. In the vicinity of 1409 Enfield Street, the car operated by the defendant struck a utility pole located on the easterly side of the street. The street in the area was lighted by street lights. Both the pole and the car were damaged, and the defendant received injuries about his head, face and chin. He staggered up the steps of the house located at 1409 Enfield Street, holding the side of his head. Two police officers arrived at the scene of the accident some two to five minutes after it occurred and found the defendant alone, bleeding from the chin. The defendant's speech was slurred, and he had a strong odor of alcohol on his breath. He thought he was in the town of Cheshire and that the time was 10 p.m. He was taken to the office of Dr. Gourlie. The doctor gave the defendant a local anesthetic, and some eighteen sutures were necessary to treat his injuries. He was later taken to the police station, and approximately one hour after the accident a urine specimen was obtained. The specimen was sealed and sent to Dr. Stolman, the state toxicologist. An analysis was made, and it was found that there was an alcohol concentration in the urine specimen of 0.33 percent by weight. This result, correlated to blood alcohol concentration, indicated 0.25 percent by weight of alcohol in the blood.

The defendant has moved to correct the substituted finding by striking out six paragraphs and adding some twenty additional paragraphs. Many of the paragraphs sought to be added consist mainly of statements of evidential matter and have no proper place in a finding of subordinate facts—for instance, the request that the court find that "[i]n the case of a head injury, it is very difficult from a medical standpoint to assess an opinion as to a person being under the influence." See Maltbie, Conn. App. Proc. § 137. It must also be observed that what the defendant proposed to do in several instances was to substitute a finding more favorable to himself but derived from conflicting testimony, and to disregard the discretion vested in the court to determine weight and credibility to be accorded to the evidence. Id. § 156. Since no ruling on evidence was assigned as error, the two pages reciting evidence were improperly included in the assignment of errors. *McIsaac* v. *Hale,* 105 Conn. 249, 251; see Cir. Ct. Rule 7.29.1 (4). The ultimate question raised by these assignments is essentially the same as that presented by the defendant's final assignment, viz., whether on all the evidence the trial court was in error in finding the defendant guilty beyond a reasonable doubt. In *State* v. *Guilfoyle,* 109 Conn. 124, 139, the court stated: "[W]here such a situation is presented, pursuit of claimed corrections of the finding will seldom be necessary or profitable, as the rights of an accused person will be fully protected by the comprehensive inquiry required by the general assignment pertaining to guilt beyond a reasonable doubt, upon all the evidence." See *State* v. *Gotsch,* 23 Conn. Sup. 395, 396.

Because, however, the defendant in his brief and argument places great weight on several of his assignments of error, we deem it expedient to con-

sider these assignments at greater length. Dr. Gourlie was unable to form an opinion as to whether or not the defendant was under the influence of intoxicating liquor when he examined him shortly after the accident. The doctor was consulted for the purpose of treating the defendant's injuries and not for the purpose of determining his sobriety or lack of sobriety. He gave him a local anesthetic and then treated him. No tests were given to determine intoxication. The doctor testified that although he noticed an odor of alcohol on the defendant's breath it would be difficult, because of the defendant's head injuries, to give an opinion as to whether or not the defendant was under the influence of intoxicating liquor. Because of the doctor's inability to form an opinion, it is urged that a conclusion consistent with innocence should have reasonably been drawn from such testimony. The short answer to this contention is that the doctor could not, because of the defendant's injuries, express an opinion as to his sobriety or lack of sobriety. Any inference which might be drawn, either as to innocence or guilt, from such testimony would be in the realm of speculation and conjecture. See *Meagher* v. *Colonial Homes Co.*, 109 Conn. 343, 348. The court was not in error in refusing to correct its finding in this respect.

The defendant requests us to consider the question of the weight which the trial court should have accorded the evidence relating to the chain of custody of the specimen. We can make no independent inferences or determine what value or weight the trier should have given to the evidence in view of the alleged failure of the state to prove continuous custody. That of course is a determination for the trial court and will not be disturbed unless the conclusion reached by it was one contrary to that upon which reasonable men could not

differ. Our examination of the defendant's claim leads us to the conclusion that the defendant misapprehends the rule of evidence pertaining to the proof of identity of an item of evidence through tracing its possession from the time of taking to the time of presentation at trial. The state is required to convince the trier beyond a reasonable doubt that the item offered in evidence is the one originally taken, unaltered in any material respect. When the evidence taken is wholly or partially destroyed through laboratory analysis, the result of the analysis becomes evidence, and the only proof required of the state is that the laboratory tests were performed on the identical item taken. This does not mean, in the tracing of custody, that every possible doubt must be excluded. That, in effect, is what the defendant urges us to accept as a rule of law. See *State* v. *Thomas,* 105 Conn. 757, 759. In the instant case, there was ample evidence that the specimen taken and mailed to Dr. Stolman, the state toxicologist, on June 14 was identical to the one received by him, and all precautions as to the taking of the specimen, its transmission and its analysis had been properly pursued. In addition, the container included the name and address of the defendant.

Because of the failure of the investigating officers immediately to charge the defendant with the instant crime, it is contended that that failure must be construed as consistent with innocence. The observations of the officers at the scene of the accident were consistent with the defendant's being intoxicated: the strong odor of liquor, his manner of speech, his method of walking, his confusion as to his whereabouts and the correct time, the circumstances surrounding the accident, which occurred on the opposite side of the highway from the direction in which the defendant was driving, and the

striking of a pole after driving over a lawn and a driveway for a distance of 111 feet. However, because of the defendant's injuries the officers prudently delayed charging him with the instant crime until confirmatory evidence was obtained from the results of the urine analysis. This evidence was of such a convincing character, when coupled with the other available evidence, as to leave no reasonable doubt concerning the degree of the defendant's insobriety at the time he was apprehended. The delay of the officers in arriving at an opinion as to the defendant's sobriety before arraigning him for the instant crime (originally the charge was reckless driving) warrants no such construction as is contended for by the defendant.

During the cross-examination of Dr. Stolman, the question was asked, "So that the fact as to how much a person had to drink before getting arrested is vital here in this type of case, isn't that true?" His answer was, "Yes. That is why more than one sample is necessary." From this answer, the defendant claims as a matter of law that the results of an analysis of one specimen have no evidential value and the court was in error in considering such evidence. The court had before it the lengthy and detailed testimony of Dr. Stolman pertaining to the laboratory test of the specimen in question and the conclusions reached by him on the basis of that test. The weight to be attached to the results of the chemical analysis was a question for the determination of the trial court. The results of the analysis, coupled with the other substantial evidence, were more than ample to make out a prima facie case of guilt. A prima facie case of guilt is made out "where the evidence indicates to a reasonable person such a strong probability of guilt that a denial or an explanation by the defendant is reasonably called for." *State* v. *Nelson,* 139 Conn.

124, 127. Thus it follows that an adverse inference could be drawn from the failure of the defendant to testify in his own behalf. *State* v. *Foster*, 23 Conn. Sup. 412, 415.

In view of the authority of the trial court as to the credit to be given to testimony, as to the weight to be attached to it, and as to the inferences to be drawn from facts in evidence, including the inference to be drawn from failure of the defendant to testify in his own behalf, we cannot say that the court erred in concluding, on all the evidence, that the defendant had been proven guilty beyond a reasonable doubt of the crime charged.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.