## MARK C. MEAGHER *vs.* THE COLONIAL HOMES COMPANY ET ALS.

Third Judicial District, Bridgeport, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued April 11th—decided June 13th, 1929.

*Joseph G. Shapiro,* with whom, on the brief, were *Harry Allison Goldstein* and *Charles S. Brody,* for the appellant (the defendant The Stenstream Company).

*J. Walter Scheffer,* for the appellee (plaintiff).

HINMAN, J. On November 1st, 1926, the plaintiff sold six lots in Fairfield to Kingston, Stock and Kingston, who soon afterward incorporated as The Colonial Homes Company, and transferred the lots to the corporation. The plaintiff took a blanket mortgage for $24,000 on the entire property, and agreed to release the lien of this mortgage upon any one of the lots upon payment of $4,000 or to take, in lieu of such payment, a mortgage on such lot for that amount, subject to a building loan mortgage of not more than $8,700. Soon afterward, Kingston, Stock and King-

ston, desiring to build on lot number one and a small part of an adjoining lot, arranged with The Lomas & Nettleton Company for a building loan of $8,700, secured by first mortgage upon lot number one and the part of the adjoining lot, and with the plaintiff to release the same from his blanket mortgage and take, in substitution, a mortgage of $5,000, subject to the Lomas & Nettleton mortgage. Before this arrangement was consummated, the plaintiff went to Florida where he remained several months. While there, on November 27th, 1926, he executed the release and forwarded it to his agent in Bridgeport with instructions to deliver it to Lomas & Nettleton in order that the latter's mortgage could go upon the record as a first mortgage, to be followed by the $5,000 mortgage to the plaintiff as a second mortgage, all of which was subject to instructions that the release should not be delivered for record until all having or claiming any right of lien upon the property should execute and deliver waivers thereof.

The plaintiff's agent delivered the release to the agent of Lomas & Nettleton, with these instructions, and the latter delivered it to the Kingstons and Stock with instructions that it was not to be delivered for record or recorded until waivers of liens executed by all mechanics and materialmen had been delivered for the plaintiff's protection, and the Kingstons and Stock were instructed to procure such waivers, also waivers for Lomas & Nettleton. On December 10th, 1926, the mortgage to Lomas & Nettleton was executed and on December 11th this, with the release executed by the plaintiff, the mortgage to the plaintiff, and the waivers for Lomas & Nettleton, were delivered for record.

In addition to the foregoing facts the trial court found that the Kingstons and Stock secured waivers

for the benefit of the plaintiff executed and delivered by the appellant, The Stenstream Company and by one Papalias, but that these waivers were subsequently lost or destroyed by the Kingstons and Stock, to the apparent advantage of the signers over the plaintiff, and that the loss was with the knowledge and connivance of these defendants. The plaintiff's mortgage was held to be prior to all other incumbrances except the Lomas & Nettleton mortgage, and he was awarded the entire fund ($4,819.91) accruing from the proceeds of the sale under foreclosure.

The appellant is entitled to the requested addition to the finding that it commenced to render services and furnish materials in the construction of the house on the lot in question, on December 2d, 1926, continued until July 19th, 1927, and complied with the provisions of the statute relative to the protection, by mechanic's lien, of its claim, which amounts to $1,290.04, which lien thereby became effective from December 2d, 1926. There should be added, also, that several months after December 10th, 1926, the plaintiff's agent and representative, Moffitt, called upon the agent of Lomas & Nettleton and upon The Colonial Homes Company for a waiver of mechanic's liens as to the plaintiff's mortgage, but did not receive it.

It is also sought to eliminate the finding that a waiver for the benefit of the plaintiff was executed and delivered by The Stenstream Company, and we regard this vitally important fact as lacking support in the evidence. So far as appears, the only persons who could have known of such execution and delivery were Stenstream, the two Kingstons, and Stock. Of these, Stenstream, while admitting that he signed one waiver, for the Lomas & Nettleton mortgage, positively denied that he signed another for the Meagher

mortgage. Charles Kingston testified that a considerable time after waiver of the Lomas & Nettleton mortgage was obtained, one party, Papalias, signed a waiver for the plaintiff's mortgage, it was then taken from the office by Stock and George Kingston to secure the other mechanics' signatures, and that was the last he saw of it. George Kingston saw Papalias sign it, and went to Stenstream's office with Stock, but Stenstream was not in, and he saw no more of the waiver. While Stock's testimony exhibits considerable uncertainty of memory and some contradictions it amounts, on this point, to a certainty that Stenstream signed one waiver, but no definite recollection as to his execution of a second one; that is, he says, if there was only one waiver, Stenstream signed it, but if there were two he was only sure that Stenstream signed one. It is unquestioned that all the mechanics signed a waiver for Lomas & Nettleton and that it had to be delivered before any money could be obtained on this mortgage. Stock's testimony as to persons, other than Stenstream and Papalias, who signed the waiver which he had in mind and as to whom there is no indication elsewhere that they signed a waiver for Meagher, indicates that it was the Lomas & Nettleton waiver to which he referred as having been signed by Stenstream. His testimony affords no substantial support for a finding that Stenstream signed the second waiver, now in question; indeed the statement of the court, at the close of the trial, that this waiver was secured, indicates that it based its finding upon a conviction that Stock, in his testimony, did not disclose the full extent of his knowledge on that subject. While it would be within the province and right of the trial court to discredit and reject all or part of his testimony or to adopt, as true, one of two or more conflicting statements made by him,

this privilege does not extend to the finding of a fact, contrary to that to which he testified, and which does not find support elsewhere in the evidence or by appropriate inference therefrom. A material fact cannot be said to have been found without evidence if there is some testimony in its support—although slight —and none to the contrary (*Waters* v. *White,* 75 Conn. 88, 52 Atl. 401), but a finding of fact may not be based on mere conjecture, but must be founded, at least, upon evidence creating a probability so strong as to induce a reasonable belief in an impartial mind. *Barry* v. *Miller,* 104 Conn. 362, 365, 133 Atl. 37; *Hubert* v. *New York, N. H. & H. R. Co.,* 90 Conn. 261, 277, 96 Atl. 967; 23 Corpus Juris, pp. 51, 54. In our judgment the evidence affords no substantial support for the finding that Stenstream signed the Meagher waiver and it is corrected accordingly. There is, also, no support in the evidence or the facts found for the finding that the loss of this waiver was with the knowledge and connivance of the appellant-defendant.

It follows from these corrections that the Stenstream lien is an incumbrance prior to the plaintiff's mortgage unless, as the plaintiff also claims, his mortgage for $5,000 was, in effect, a renewal *pro tanto* of his original blanket mortgage of $24,000, and as such entitled to reinstatement as prior to the appellant's lien, under *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 127 Atl. 6. It is by no means as clear here, as in that case, that the new mortgage is to be regarded, properly, as a continuance, to the extent of its amount and as to the land covered by it, of the original blanket mortgage, but even if it be assumed to be such, elements are lacking in the present case which in *Lomas & Nettleton Co.* v. *Isacs* and the authorities therein cited (p. 620) were held to justify restoration of the original

priority of the mortgage. It cannot be held that the plaintiff released the lien of his prior mortgage in ignorance of intervening rights of the appellant and other mechanics and materialmen similarly situated; the contrary is demonstrated by his instructions to have waivers obtained from them before his release was delivered. 2 Jones on Mortgages (8th Ed.) § 1244; 19 R.C.L. pp. 469, 473. Nor are elements of estoppel wanting. The plaintiff, by his agent and representative, not only failed to obtain the waivers before the delivery and recording of the release, but neglected, for months afterward, to ascertain that omission and to take any action to correct the results thereof. In the meantime the appellant continued to furnish materials and render services in reliance, it is fair to assume, upon the security afforded by its mechanic's lien as entitled to priority over the plaintiff's mortgage, whereas, had a waiver as to that mortgage been seasonably requested and obtained, it might well have protected itself from the resulting prejudice to its security by exacting payments, or discontinuing rendition of services and furnishing materials, or otherwise. The plaintiff is now estopped from asserting, on equitable grounds, a priority over the lien of the Stenstream Company. *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 500, 136 Atl. 78; *Lomas & Nettleton Co.* v. *Isacs, supra;* 41 Corpus Juris, 583; 58 L.R.A. 788, 807.

There is error, the judgment is set aside and the cause is remanded with direction to the Superior Court to adjudge that of the fund in the hands of the clerk, $1,290.04 be paid to The Stenstream Company, and the balance thereof to the plaintiff.

In this opinion the other judges concurred.