## THE CONNECTICUT NATIONAL BANK *v.* LORING F. CHAPMAN ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

394

Argued December 8, 1965—decided February 1, 1966

*Thaddeus G. Cowell, Jr.,* for the appellants (defendants Nielsen).

*Robert S. D'Andrea,* for the appellee (plaintiff).

SHANNON, J. This is an action brought by the plaintiff to reinstate and foreclose a first mortgage dated December 22, 1958, hereinafter referred to as mortgage 1, which was released on December 11, 1961, in connection with another mortgage on the same property taken by the plaintiff on December 11, hereinafter referred to as mortgage 2.

The case was submitted on a stipulation of facts. On December 22, 1958, the defendants Robert H. and Teresa Nielsen, hereinafter referred to as the Nielsens, were the owners of the subject premises, which they mortgaged to the plaintiff to secure a demand note for $19,000 with interest. Thereafter on July 8, 1960, the Nielsens sold the premises to Loring F. and Toy Chapman, hereinafter referred to as the Chapmans, who assumed and agreed to pay mortgage 1, which had then been reduced to $18,205.44, and who gave the Nielsens a second mortgage for $10,500, specifically subject to mortgage 1. It was duly recorded. A short time later, the plaintiff received an insurance endorsement reflecting the change of ownership and containing a mortgage clause setting forth the fact that the Nielsens held a second mortgage on the property. Subsequent insurance policies delivered to the plaintiff also reflected the Nielsen's mortgage. Thus, some department of the plaintiff knew of its existence.

The Chapmans became delinquent in the payment of property taxes to the city of Norwalk and defaulted on payments of mortgage 1. In an endeavor to meet these debts they applied to the plaintiff for an additional loan of $2000 to be secured by a mortgage in the amount of $19,500. The plaintiff requested a local attorney to search the title to the premises, draw and record all papers legally required to secure a $19,500 first mortgage note on the premises and to arrange the closing of this mortgage.

On December 11, 1961, the attorney closed this mortgage and delivered to the Chapmans a release of mortgage 1. The release of mortgage 1 and the recording of mortgage 2 took place on the same day. At the time of the closing the attorney, despite his title search, had no actual knowledge of the existence of the Nielsens' mortgage, and the plaintiff did not request him to obtain a release of it except as its search order requested him to close a first mortgage on the premises. In connection with the closing, the attorney delivered to the plaintiff his certificate of title, which showed title to the premises in the Chapmans subject only to the new first mortgage for $19,500 and to a public utility easement.

Thereafter, the Chapmans paid the plaintiff a total amount of $838.26 on account of mortgage 2. After July 24, 1962, they made no further payments to the plaintiff, and by writ dated February 19, 1963, the plaintiff commenced an action to foreclose mortgage 2 against the Chapmans. Thereafter the plaintiff became aware of the existence of the Nielsens' mortgage, of which it had known but had negligently overlooked. It then amended the writ and complaint, cited in the Nielsens as defendants, and sought reinstatement and foreclosure of mortgage 1.

The Nielsens filed a counterclaim, and their mortgage was foreclosed. The Chapmans having failed to redeem the mortgaged premises, the title thereto vested in the Nielsens by virtue of that judgment, "subject, however, to being divested by any further order or decree of this Court as might finally settle and determine, in favor of the plaintiff, the issues in this action between the plaintiff and the defendants Robert H. Nielsen and Teresa Nielsen in respect to the priorities of the mortgages held by each of said parties on the mortgaged premises."

The premises were appraised at $30,000 on September 20, 1961, and at $25,000 on May 24, 1963. It was also stipulated that on March 25, 1964, the fair market value of the subject premises was less than the total of mortgage 1 and the Nielsen mortgage. The Nielsens claim that the court erred in rendering judgment for the plaintiff because (1) the plaintiff had actual knowledge of their mortgage; (2) the plaintiff was, together with its attorney, guilty of negligence; and (3) their property rights were impaired.

Equity always looks to the substance of a transaction and not to mere form. There being no intention to release a first mortgage lien, its actual release for a momentary period should not in equity permit a subsequent lienor, who has not been prejudiced thereby, to intervene and acquire priority. That equity will act to prevent such a result is clearly established by the great weight of authority. *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 619, 127 A. 6.

One of the most common mistakes connected with releases of mortgages occurs when the mortgage is renewed and the prior lien is released in ignorance of intervening rights. Ignorance in such a case is

regarded in equity as equivalent to a mistake, and relief will be granted when there is no element of estoppel involved. *Lomas & Nettleton Co.* v. *Isacs,* supra, 620. The presumption that one taking a mortgage upon land knows of all prior encumbrances of record affecting it certainly is no stronger than the presumption that one knows the law which determines his rights, yet relief may be given in equity against mistakes of law. *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 242, 193 A. 769; *Tiernan* v. *Savin Rock Realty Co.,* 115 Conn. 473, 482, 162 A. 11; *Bronson* v. *Leibold,* 87 Conn. 293, 298, 87 A. 979; *Park Bros. & Co.* v. *Blodgett & Clapp Co.,* 64 Conn. 28, 34, 29 A. 133.

We have upheld the power of a court of equity to grant relief from the consequences of an innocent mistake, although the mistake was not unmixed with negligence, when the failure to do so would allow one to enrich himself unjustly at the expense of another. *Lomas & Nettleton Co.* v. *Isacs,* supra. Whether or not a plaintiff will be barred of remedy in equity against the effect of mistake because of his negligence depends to a large extent upon the circumstances of the particular case. 2 Pomeroy, Equity Jurisprudence (5th Ed.), p. 1045.

The Nielsens claim that we refused to reinstate a released mortgage over an intervening lien in a case where the plaintiff had actual knowledge of it. *Meagher* v. *Colonial Homes Co.,* 109 Conn. 343, 349, 146 A. 609. In that case, however, the intervening lienor was a mechanic's lienor engaged in building construction who continued to furnish services and materials after the release of the preceding mortgage, and the plaintiff was thus estopped to assert priority over his rights. *Meagher* v. *Colonial Homes*

*Co.,* supra; *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* supra, 245.

If the circumstances show that there was no intent that the lien should be lost by the release of the original mortgage, and if the intervening lienholder has not been prejudiced by any change in his status because of reliance on the release, as in the instant case, relief should be granted. 2 Pomeroy, op. cit., p. 1046 n.14. The plaintiff would not be entitled to the remedy it seeks if that would work an inequity to the Nielsens. Here, the only action the Nielsens took was, after being cited in as parties, to file a counterclaim seeking the foreclosure of their mortgage against the Chapmans, who failed to redeem.

To deny relief to the plaintiff would result in the unjust enrichment of the Nielsens through an unexpected and undeserved windfall. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood,* 146 Conn. 273, 278, 150 A.2d 215; *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A. 162. It is not necessary, in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act. The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled? *Hixon* v. *Allphin,* 76 Idaho 327, 333, 281 P.2d 1042.

Here the Nielsens were the original mortgagors of the premises in mortgage 1 in the amount of $19,000. They later sold the premises to the Chapmans and received a second mortgage from them in the principal amount of $10,500. They subse-

quently foreclosed this mortgage and now again hold title to the premises under the supplemental judgment subject to the decision in this case. The Nielsens' property rights have not been prejudiced by any conduct on the part of the plaintiff. The court's conclusion that the depreciation in the value of their security, if any, resulted from their own neglect in failing to take timely action to protect their interests is amply supported by the stipulated facts. There is no necessity to discuss the other assignments of error.

There is error in the form of the judgment, it is set aside and the case is remanded with direction to fix a new law day only.

In this opinion the other judges concurred.