[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this mortgage foreclosure action ("Prudential") seeks a judgment of foreclosure of its mortgage on property owned by the defendants Bruce W. Johnson and Kathleen B. Johnson, and known as 1 Beachwood Road, Woodbridge (the "Premises"). Prudential's $255,000.00 mortgage was recorded on August 15, 1988, in Volume 150, Page 396, of the Woodbridge Land Records (the "Prudential mortgage"), and Prudential contends that its mortgage is a first lien on the premises. This is disputed by the defendant Union Trust Company which also claims to have a first mortgage on the Premises. Union Trust holds a mortgage on the Premises which was recorded on January 14, 1987, in Volume 141, Page 5, of the Woodbridge Land Records (the "Union Trust mortgage"). The trial before the court was limited by agreement of the parties to a determination of the priority of the Prudential mortgage.
Many of the facts surrounding this matter are not in dispute. Bruce and Kathleen Johnson purchased the Premises in 1986 and financed the purchase with a first mortgage to CitiCorp for $148,000.00. In January, 1987, the Johnsons obtained a Home Equity Line of Credit for $50,000.00 from Union Trust Company. This line of credit was secured by a second mortgage on the Premises. This second mortgage, which we are calling the "Union Trust mortgage", has never been released.
In August, 1988, the Johnsons refinanced the existing first CT Page 3308 mortgage on the Premises with a new first mortgage to Prudential (the Prudential mortgage). The Johnsons were represented in the refinancing by Attorney Neil Crane. Prudential's written closing instructions directed Crane to "pay off all existing liens" on the Premises and to make sure that the Prudential mortgage would be "a valid first lien of record."
There is no dispute between the parties that on August 16, 1988, after the closing, $49,933.72 of the $255,000.00 Prudential mortgage proceeds was paid to Union Trust and credited to the Johnsons' Home Equity Line of Credit, leaving a zero balance due on the line of credit. The dispute between the parties is whether Crane asked for a release of the Union Trust mortgage and whether Union Trust agreed to provide such a release. This dispute is critical because in January, 1989, some five months after the closing of the Prudential mortgage, Bruce Johnson began once again taking advances on the unreleased Union Trust Home Equity Line of Credit. Beginning with a $300.00 advance on January 30, 1989, Johnson continued to draw on the line until. October, 1990, at which time the Full $50,000.00 had been advanced.
Union Trust claims a first priority for the $50,000.00 1987 Home Equity Line of Credit mortgage and Prudential claims a first priority for its 1988 mortgage for $255,000.00. Prudential claims that Attorney Crane asked a Union Trust branch manager for a release of mortgage for the Home Equity Line of Credit in connection with the August 1988 payment of $49,933.72 and that the branch manager agreed to provide such a release. Prudential further contends that because of this agreement by Union Trust, equitable principles require subordination of the Union Trust mortgage to the Prudential mortgage.
Attorney Crane testified that in preparation for the closing of the Prudential mortgage, he phoned John Torello, the branch manager of Union Trust's Amity Office, to request a release of mortgage and a pay-off figure for the Home Equity Line of Credit. Crane knew that a release of the mortgage was necessary because a simple pay-off would not extinguish the Johnsons' ability to borrow more money on the line of credit. Crane was acquainted with Torello from another transaction and recalled that he spoke to Torello two or three times about the Johnson refinance. They discussed the timing of the pay-off and calculation of the pay-off amount in light of the three-day post-closing rescission period required by federal law. According to Crane, Torello CT Page 3309 verbally agreed to give a release of the Union Trust Home Equity mortgage.
Crane testified that it was common during 1988 to receive releases after the closing because the very high volume of closings at that time overwhelmed the banks, preventing them from providing releases of mortgage on short notice. When the Prudential mortgage closing was held on August 9, 1988, Crane did not have an executed release of either the Union Trust mortgage or the CitiCorp mortgage, the existing first mortgage which was also being paid off with the proceeds of the refinancing.
Crane further testified that the three-day post-closing rescission period ended at midnight on Friday, August 12. The next business day was Monday, August 15. On that Monday Crane drove to the Woodbridge Town Hall to record the Prudential mortgage and to do a title bring-down. Because the Amity branch of Union Trust was located directly on the route to the Woodbridge Town Hall, Crane hand-delivered the pay-off check to Torello, enclosing with the check a letter stating that the check represented the pay-off of the home equity loan. The letter further stated "Thank you for forwarding the release." Crane testified that he spoke briefly to Torello when he gave him the check and that Torello again agreed to forward the release. It is undisputed that Union Trust credited the pay-off check against the Home Equity Line of Credit on the following day, April 16.
Union Trust contends that it never agreed to provide a release of the mortgage and that Crane never asked for a mortgage release. Union Trust called John Torello as a witness. Torello is no longer employed in banking, being now self-employed in the dry cleaning business. He testified that he was the branch manager for the Amity branch of Union Trust from November 1985 until some time in August, 1988, when he was reassigned to be the branch manager of Union Trust's Hamden branch. Torello testified that he had no recollection of closing the 1987 Home Equity line of Credit with the Johnsons. He further testified that he had no recollection of receiving the transmittal letter from Crane in 1988 which referred to the release of mortgage, and he also had no recollection of Crane personally delivering the pay-off check. He attached no significance to his lack of recollection, however, pointing out that he realized he must have participated in the home equity closing when he was shown that he witnessed the Union Trust mortgage at that closing. With respect to his recollection, Torello further admitted that it was during August, 1988, CT Page 3310 that he learned that he would be reassigned to the much larger Union Trust branch in Hamden. The Hamden branch manager would only be at the branch until the end of August, so Torello was a little nervous and also anxious to complete his work at the Amity branch in order to start working in Hamden before the end of August so he could train under the then branch manager.
Alan Michael DeMar, a Union Trust employee in its Shelton office, testified that he looked for a written request for a mortgage release in 1991 when this issue arose because of the Johnsons' default on the Prudential mortgage. He did not find such a request although he admittedly did not search the branch file and did not know how thorough a search had been done in the branch.
Having considered all the evidence and the arguments of counsel, the court credits the testimony of Neil Crane and finds that John Torello did agree to provide a release of the Union Trust mortgage upon its pay-off and that Torello received the written transmittal letter which referred to the release. Crane's testimony is corroborated by Union Trust records which show that the Home Equity Line of Credit was paid off on August 16, 1988, one day after Crane testified he delivered the check and letter to Torello.
Torello's testimony did not contradict Crane's testimony. Torello simply has no recollection of any of these events. Moreover, Torello's failure to obtain the release of mortgage and forward it to Crane is explained by the fact that Torello's attention at that time was diverted to his reassignment to Hamden and his concerns about that change in job responsibilities. Although Crane negligently failed to follow up to obtain the mortgage release after the closing, all of his actions at the time, including the written closing statements, evidence his intention to obtain a release of mortgage from Union Trust. Without such a release, the payment to Union Trust of $49,933.72 from the Prudential mortgage proceeds would have been a futile and illogical act because, as Crane was aware, the Johnsons had the right to draw up to $50,000.00 on the line of credit until the mortgage was released.
The plaintiff argues that on these facts, equity operates to provide Prudential with a first priority for its mortgage. "An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in CT Page 3311 order that complete justice may be done between the parties." Hartford Federal Savings Loan Association v. Tucker, 196 Conn. 172,175 (1985). Equity regards "that as done which ought to be done." Podzunas v. Prudential Ins. Co., 125 Conn. 581, 586
(1939). "Equity always looks to the substance of a transaction and not to mere form." Connecticut National Bank v. Chapman,153 Conn. 393, 397 (1966).
Equitable powers have been employed by our courts to alter lien priorities on real estate. In Connecticut National Bank v. Chapman, id., the plaintiff sought reinstatement and foreclosure of a mortgage which was unintentionally released of record. The Connecticut Supreme Court upheld the judgment for the plaintiff. "There being no intention to release a first mortgage lien, its actual release for a momentary period should not in equity permit a subsequent lienor, who has not been prejudiced thereby, to intervene and acquire priority." Id.
The use of equitable powers to alter real estate priorities is dependent on the intention of the parties. "The intention of the parties is the controlling consideration. . . ." Lomas 
Nettleton Co. v. Isacs, 101 Conn. 614, 622 (1924). In this case the intention of the parties, including Union Trust, was that the Union Trust mortgage would be released, thereby giving first priority to the Prudential mortgage. On these facts, the court can employ either equitable subrogation or estoppel to achieve the result intended by the parties.
Equitable subrogation allows a person who pays a lien holder to assume the same priority position as the lien holder held. The party paying the lien can step into the place of the paid-off encumbrancer. Han v. United States, 944 F.2d 526, 528 (9th Cir. 1991). There is no dispute that part of the $255,000.00 Prudential mortgage loan to the Johnsons was used to pay off the Johnsons' Home Equity Line of Credit with Union Trust. Under the doctrine of equitable subrogation, Prudential assumes the first priority position which Union Trust would otherwise have.
Estoppel effects the same result. Bauer v. Leiberger,3 Conn. Sup. 315, 317 (1936). In agreeing to provide a release of the Union Trust mortgage, John Torello made a statement which was intended to cause Attorney Crane, on behalf of the Johnsons, to pay off Union Trust's mortgage. Crane relied on the statement and consummated the Prudential mortgage closing and the Union Trust pay-off in reliance on Torello's promise. The Prudential CT Page 3312 closing would not have occurred without the promise of a release of the Union Trust mortgage. Union Trust is therefore estopped from claiming the priority of its mortgage over the Prudential mortgage.
Union Trust contends that even if the court finds that it agreed to release its mortgage, Prudential should not have priority over Union Trust for any more than $148,000.00, the amount of the original first mortgage to CitiCorp. This claim is without merit for at least two reasons. First, such a claim would be inconsistent with the principles of equitable subrogation or estoppel. Under equitable subrogation, Prudential acquires Union Trust's first position as a result of paying off the debt to Union Trust. The analysis does not permit a hybrid approach where Prudential would acquire priority for only a portion of its debt and be subordinate to Union Trust for funds advanced by Union Trust months after the Prudential payment to Union Trust. Likewise, estoppel precludes Union Trust from claiming any priority for its mortgage over the Prudential mortgage. The Prudential mortgage necessarily moves up to a first position on the Premises.
The second reason for rejecting Union Trust's contention is that it is not consistent with the intention of the parties. Union Trust did not agree to subordinate its mortgage to some portion of the new Prudential mortgage. Union Trust, knowing of the new mortgage to Prudential, agreed to release its mortgage. On these facts, it is consistent with the intention of the parties that the Prudential mortgage be given a first priority on the Premises for the full mortgage amount and that the Union Trust mortgage, unreleased of record, be subordinate to the Prudential mortgage.
Partial judgment is entered that the Prudential mortgage is a first lien on the Premises and the Union Trust mortgage is subsequent and subordinate to the Prudential mortgage in full.
Christine S. Vertefeuille, Judge CT Page 3313