[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION re DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#130)
I
The present action stems from a 1988 loan made from the defendant, Travelers Insurance Company (Travelers), to the plaintiff, Kings Lane Associates (Kings Lane), and Traveler's CT Page 5284-RR actions upon King Lane's default on the loan. Accordingly, the following facts as alleged in the plaintiff's revised complaint are an essential backdrop to the present action.
On October 22, 1987, Kings Lane filed a mortgage application with Travelers for a $5,000,000 loan. Travelers responded with a "Statement of Application and Commitment" (Commitment Letter) detailing the terms and conditions of the mortgage loan. Those terms and conditions required Kings Lane to obtain three irrevocable stand-by letters of credit (LCs).
Accordingly, on January 22, 1988, Kings Lane obtained three LCs from Citytrust payable to Travelers, all due to expire on February 28, 1989. The first, a $93,000 LC, provided for draw upon Kings Lane defaulting on the Loan (Default LC). The second, a $72,000 LC, provided for draw upon Kings Lane failing to complete the installation of tenant improvements (Tenant LC). The third, a $30,000 LC, provided for draw upon Kings Lane's failure to lease space or pay leasing commissions (Leasing LC).
On January 25, 1988, Travelers loaned $5,000,000 to Kings Lane pursuant to the terms and conditions stated in the mortgage note (the Mortgage Note). On the same date, Kings Lane secured the loan with a mortgage on property located at 2960 Post Road, Southport, Connecticut (the Property), pursuant to the terms and conditions stated in the Mortgage and Security Agreement (the Mortgage Agreement), and a Conditional Assignment of Rents and Leases.
On October 25, 1988, the Default LC was reduced from $93,000 to $55,400, the Tenant LC was reduced from $72,000 to $48,000, and the Leasing LC was reduced from $30,000 to $19,931. On February 27, 1989, Citytrust amended the expiration date of the three LCs to February 28, 1990. Similarly, on February 16, 1990, Citytrust amended the expiration date of the three LCs to February 28, 1991.
On February 7, 1991, Travelers notified Kings Lane that it would not accept further letters of credit from Citytrust. Travelers stated that if replacement letters of credit were not received from an approved bank by February 19, 1991, it would exercise its rights under the loan documents. On February 20, 1991, Travelers drew down on the LCs and placed the proceeds, totalling $123,321, in a Mortgage Holding Account.
The Mortgage Note became due and payable on February 1, 1991. However, on January 31, 1991, Travelers extended the maturity date CT Page 5284-SS to April 2, 1991. Subsequently, Kings Lane defaulted on the mortgage loan.
Although Kings Lane merely states that it defaulted on the mortgage loan, the following facts are gleaned from the pleadings and exhibits submitted by Travelers. In determining whether to grant a second extension to Kings Lane, Travelers found that in July of 1990, in violation of § 10 of the Mortgage Agreement, Kings Lane secured a $500,000 loan from First Constitution Bank with a second mortgage on the Property. (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit P to the Affidavit). On March 28, 1991, Travelers advised Kings Lane that it had until April 10, 1991 to cure this default by removing the junior mortgage. Id. Kings Lane failed to cure the default. Accordingly, by letter dated April 11, 1991, Travelers demanded "payment in full of the outstanding principal balance of the Note in the amount of $5,000,000, together with the cost of attorney's fees, accrued interest and accrued default interest (at the rate of 15.375%) and other applicable charges." (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit Q to the Affidavit). Travelers stated that if payment was not received on or before April 17, 1991, it would pursue its "rights and remedies available at law and pursuant to the Loan Documents." Id.
One of these rights was to collect rents from the Property. By letter dated April 19, 1991, Travelers notified Kings Lane of its intention "to exercise its rights under the Mortgage and Security Agreement dated January 25, 1988 (the `Mortgage') to demand and receive directly from the tenants all present and future rental payments and other sums due from the tenants." (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit R to the Affidavit). On the same date, Travelers forwarded letters to the tenants of the Property demanding that they pay all rent on their leases directly to Travelers. Between April 19, 1991 and October 15, 1991, Travelers collected $323,152.93 from the tenants of the Property. Of this amount, $71,338.22 was used for the maintenance and operation of the Property. Therefore, the net rents totalled $251,814.71. The net rents added to the proceeds from the LCs totalled $375,135.71.
On April 19, 1991, Travelers instituted a strict foreclosure action, at which Kings Lane did not raise any defenses, counterclaims, or setoffs. On August 6, 1991, Travelers filed a motion for judgment, submitting an appraisal valuing the Property at $3,900,000. On August 19, 1991, the court, Hauser, J., entered CT Page 5284-TT a judgment of strict foreclosure finding the debt owed by Kings Lane to Travelers to be $5,296,223.01 and the value of the Property to be $3,900,000. The court, Hauser, J., set October 3, 1991 as the law day. Kings Lane did not redeem the Property by this day, causing title to pass to Travelers.
On April 26, 1994, Kings Lane filed a five-count complaint against Travelers alleging unjust enrichment, violation of the Connecticut Unfair Trade Practices Act (CUTPA), breach of contract, violation of the due process clause of the fourteenth amendment to the United States constitution, and breach of the covenant of good faith and fair dealing. On November 4, 1994, Kings Lane filed a revised eleven-count complaint against Travelers.
Counts One, Three, and Five allege that by retaining the proceeds from the LCs, Travelers was unjustly enriched. Counts Two, Four, and Six allege that by failing to remit the proceeds from the LCs, Travelers' actions violated CUTPA, General Statutes §§ 42-110a through 42-110q.
Count Seven alleges that by collecting the rents without first entering and taking possession of the Property and by retaining rents in excess of the amount expended to maintain and operate the Property, Travelers breached its contract with Kings Lane. Count Eight alleges that by retaining the rents not expended for the maintenance and operation of the Property, Travelers was unjustly enriched. Count Nine alleges that by retaining the rents without any legal authority after the entry of judgment in the foreclosure action, Travelers' actions violated CUTPA.
Count Ten alleges that despite Kings Lane's efforts to cure the default, Travelers advised the tenants of the Property that Kings Lane had defaulted and that all rent should be forward directly to Travelers. Kings Lane, therefore, contends that by these actions, which allegedly caused Kings Lane to lose and be deprived of substantial equity and sustain damages, Travelers violated the implied covenant of good faith and fair dealing. Count Eleven alleges that by breaching the covenant of good faith and fair dealing and causing Kings Lane to lose and be deprived of substantial equity and sustain damages, Travelers violated CUTPA.
On March 5, 1996, Travelers filed a motion for summary judgment on the ground that there exists no genuine issue of material fact as to all eleven counts of Kings Lane's revised CT Page 5284-UU complaint and that it is entitled to judgment as a matter of law. In accordance with Practice Book §§ 204 and 380, on the same date, Travelers filed a memorandum in support of its motion for summary judgment. On April 17, 1996, Kings Lane filed a memorandum in opposition to Travelers' motion for summary judgment.
II. STANDARD
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) Wilson v. New Haven, 213 Conn. 277,279, 567 A.2d 829 (1989).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp., 229 Conn. 95, 105,639 A.2d 507 (1994). "[T]he party opposing . . . a motion [for summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381." Id. Therefore, "`[a]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue.'" (Citation omitted.) Barrett v.Danbury Hospital, 232 Conn. 242, 255, 654 A.2d 748 (1995).
"`To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts which contradict those stated in the movant's affidavits and documents.'" Connecticut NationalBank v. Great Neck Development, 215 Conn. 143, 148, 574 A.2d 1298
(1990). "`It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment].'" Barrett v. Danbury Hospital, supra, 232 Conn. 255.
"`The test [for the grant of a motion for summary judgment] is CT Page 5284-VV whether a party would be entitled to a directed verdict on the same facts.'" Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 105-06. "A directed verdict is appropriate when the jury could not reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) Boehm v. Kish, 201 Conn. 385,393 n. 4, 517 A.2d 624 (1986).
A. Unjust Enrichment
Counts One, Three, and Five allege that by retaining the proceeds of the LCs, Travelers was unjustly enriched. Similarly, Count Eight alleges that by retaining the rents not used for the maintenance and operation of the Property, Travelers was unjustly enriched. In its memorandum in support of its motion for summary judgment, Travelers argues that because the proceeds from the LCs were additional collateral for Kings Lane's debt, it was entitled to retain these proceeds to partially satisfy the debt. Travelers further argues that it gave Kings Lane adequate consideration for the LCs, specifically, the $5,000,000 loan. Travelers finally argues that because the combined value of the Property, appraised at $3,900,000, the proceeds from the LCs, totalling $123,310, and the net rents, totalling $251,814.71, falls short of the $5,000,000, it did not receive something of value to the detriment of Kings Lane. Accordingly, Travelers contends that by retaining the proceeds of the LCs, it was not unjustly enriched.
In opposition, Kings Lane argues that Travelers improperly failed to reduce the debt with these funds prior to the foreclosure action. Kings Lane argues that the transfer of the Property by virtue of the foreclosure action satisfied the debt. Kings Lane contends further that Travelers benefited by not applying these funds to the debt prior to foreclosure. Kings Lane finally argues that because Travelers did not obtain a deficiency judgment, Travelers had no legal authority to retain the funds. Accordingly, Kings Lane contends that by retaining these funds, Travelers was unjustly enriched.
"`A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . .Connecticut National Bank v. Chapman, 153 Conn. 393, 399,216 A.2d 814 (1966). With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case CT Page 5284-WW where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Providence Electric Co. v. Sutton Place. Inc.,161 Conn. 242, 246, 287 A.2d 379 (1971). . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendant unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . .'" Barbara Weisman, Trusteev. Kaspar, 233 Conn. 531, 550, 661 A.2d 530 (1995).
Travelers benefited from the net rents, in the amount of $251,814.71, and the proceeds from the LCs, in the amount of $123,310. To determine whether Travelers was unjustly enriched, the court must first decide whether Travelers' retention of the proceeds from the LCs and the net rents was to Kings Lane's detriment.
This involves an interpretation of the loan documents as well as a determination of the effect of Travelers failing to obtain a deficiency judgment. The interpretation of contract terms when not clear, as the court finds in this case, is a question of fact. For example the commitment letter provides, inter alia that "[i]f Mortgagee is entitled, by the terms thereof, to draw upon any letter of credit which is security for the Mortgage Loan, Mortgagee shall apply the funds so drawn to reduce the principal balance of the Mortgage Loan." (underline added) The court concludes that there exist genuine issue(s) of material fact(s) relating to counts, one, three, five and eight that sound in unjust enrichment. The court therefore denies summary judgment as to these counts.
B. CUTPA
In Counts Two, Four, and Six, Kings Lane alleges that by failing to remit the proceeds from the three LCs to Kings Lane, Travelers' actions violated CUTPA. Similarly, in Count Nine, Kings Lane alleges that by retaining the rents without any legal authority after the entry of judgment in the foreclosure action, Travelers' actions violated CUTPA. Finally, in Count Eleven, Kings Lane alleges that by breaching the covenant of good faith and fair dealing and causing Kings Lane to lose and be deprived of substantial equity and sustain damages, Travelers' actions violated CUTPA.
General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive CT Page 5284-XX acts or practices in the conduct of any trade or business." In A-GFoods, Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215,579 A.2d 69 (1990), the Connecticut Supreme Court stated that "[i]n determining whether the practice is unfair, . . . [the courts] have adopted the criteria set out in the `cigarette rule' by the federal trade commission. . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Internal quotation marks omitted.) However, the Court "has acknowledged the statement of the Federal Trade Commission (FTC) that all three criteria set out in the cigarette rule do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Atlantic Richfield Co. v.Canaan Oil Co., 202 Conn. 234, 242, 520 A.2d 1008 (1987).
In its memorandum in support of its motion for summary judgment, Travelers argues that the basis of Kings Lane's CUTPA claims is Travelers' alleged breach of contract. Travelers further argues that Kings Lane did not allege with specificity bad faith, coercive behavior or a fraudulent or deceptive plan or scheme. Travelers, therefore, contends that Kings Lane's CUTPA claims allege a simple breach of contract, which does not constitute a violation of CUTPA. In opposition, Kings Lane argues that it "alleges unfair and deceptive practices in that Travelers improperly retained funds derived from three separate letters of credit and the collection of rents from tenants of the Property without authority under the mortgage loan documents or state law." (Plaintiff's Objection to Defendant's Motion for Summary Judgment, p. 18). Kings Lane, therefore, contends that in Counts Two, Four, Six, Nine, and Eleven it "alleges more than a simple breach of contract claim." In support of this argument, Kings Lane relies onCNF Constructors v. Culligan Water Conditioning Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 0242302 (September 9, 1993, Blue, J., 8 CSCR 1057).
"Several trial court decisions have held that an ordinary breach of contract does not give rise to a CUTPA claim." Robert S.Weiss Co. v. Medspan, Superior Court, judicial district of New CT Page 5284-YY Haven, Docket No. 0311255 (July 13, 1993, Gray, J., 8 CSCR 835,835). In CNF Constructors v. Culligan Water Conditioning Co.,
supra, 8 CSCR 1057, the court found that "the plaintiff alleges more than a simple breach of contract. It alleges a number of misrepresentations that induced the contract and it [sic] further alleges that used material were supplied under the guise of new ones." Accordingly, the court, Blue, J., found that "[t]hese allegations invoke some of the legislative concerns in enacting CUTPA." Id.
In the present case, Kings lane alleges unfair and deceptive practices on the part of Travelers in its retention of funds from three separate letters of credit and the collection of rents from tenants of the property without authority. The court finds that there exist genuine issue(s) of material fact(s) as to these counts (two, four, six, nine and eleven) and the motion for summary judgment is denied as to them.
C. Breach of Contract
In Count Seven, Kings Lane alleges that by collecting the rents without first entering and taking possession of the Property and by retaining these rents without reducing the debt, Travelers breached its contract with Kings Lane. In its memorandum in support of its motion for summary judgment, Travelers argues that because the debt exceeded the value of the Property, it was entitled to seek recovery against the additional collateral, including the rents. In its memorandum in opposition to Travelers' motion for summary judgment, Kings Lane argues that the loan documents specifically required Travelers to enter the Property and to apply the net rents to the debt. Kings Lane concludes that because Travelers failed to comply with these requirements, it was not entitled to collect or retain the rents.
 (1) Was Travelers Required to Enter and Take Possession of the Property?
The Mortgage Agreement gave Travelers the right to "all oral and written leases and other agreements . . . affecting the use or occupancy of the whole or any portion(s) of the Mortgaged Property nor or hereafter entered into, and the right to receive . . . the rents, issues and profits of the whole and any portion(s) of the Mortgaged Property . . ." (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit F to the Affidavit, p. 4). The Agreement more specifically provided that "[a]s further and CT Page 5284-ZZ additional security for the performance of the terms and conditions of this Mortgage . . . Mortgagor hereby assigns the Rents to the Mortgagee. In case of default under this Mortgage and/or the Note . . . Mortgagee is hereby authorized and empowered . . . to enter upon the Premises and into the Improvements and to collect and receive the Rents." Id., 18.
Similarly, the Conditional Assignment of Rents and Leases provided that "[i]mmediately upon the occurrence of any default under the Note, the Mortgage, this Assignment or any one or more of the leases hereby or pursuant hereto assigned . . . the Lender is hereby expressly and irrevocably authorized to enter and take possession of the Mortgaged Property by actual physical possession, or by written notice served personally upon or sent by registered mail to the Assignor, as the Lender may elect, and no further authorization shall be required. Following such entry and taking of possession, the Lender, as fully as the Assignor might do, may . . . (d) demand, collect, sue for, attach, levy, recover, receive, compromise and adjust, and make, execute and deliver receipts and releases for, all rents, issues and profits that may then be or may thereafter become due, owing or payable with respect to the Mortgaged Property or any part thereof from any present or future lessees, tenants, subtenants or occupants thereof." (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit G to the Affidavit, p. 4-5). Based on these provisions, Kings Lane contends that Travelers was required to enter and take possession of the Property prior to collecting the rents.
In a letter to Kings Lane dated April 19, 1991, Travelers stated that it was exercising its rights to demand and receive the rents. However, Travelers noted that it was "not entering or taking possession of the property and nothing contained herein, or in the exercise of Travelers' rights under the Mortgage, shall be deemed to constitute Travelers as a mortgagee in possession of the property." (Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit R to the Affidavit). Based on this letter, Kings Lane contends that Travelers failed to comply with the prerequisites of entry and possession. Accordingly, Kings Lane contends that Travelers had no authorization to collect the rents.
The court concludes that there exists an issue of material fact as to whether Travelers had to enter — actually or constructively — in order to collect the rents. Once again this court also concludes that there exists a genuine issue of material fact concerning whether Travelers failed to apply the net rents to CT Page 5284-AAA the "debt." Therefore, the motion for summary judgment directed to count seven is denied.
D. Breach of Duty of Good Faith and Fair Dealing
In Count Ten, Kings Lane alleges that despite its efforts to cure the default, Travelers collected the rents, breaching its duty of good faith and fair dealing. The implied covenant of good faith and fair dealing is "a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." Eis v. Meyer, 213 Conn. 29, 36, 566 A.2d 422
(1989).
In its memorandum in support of its motion for summary judgment, Travelers argues that Kings Lane should have expected that, as provided in the loan documents, an encumbrance without prior permission would constitute a default. Travelers further argues that Kings Lane should have expected that upon default, as permitted by the loan documents, Travelers would pursue all its remedies, including the right to collect rents. In opposition, Kings Lane argues that by improperly collecting the rents, improperly retaining the proceeds from the LCs and the net rents, all this in conjunction with its failure to pursue a deficiency judgment, Travelers acted outside of the scope of the parties' intent and, therefore, breached its duty of good faith and fair dealing.
Travelers contends that the second mortgage issued to First Constitution Bank constituted a default. Kings Lane does not oppose this contention. Therefore, the issue is what did Travelers and Kings Lane presumably intend would happen upon default? By including the rents as additional collateral, it is clear that upon default, Kings Lane expected Travelers to pursue the rents. The manner in which those rents were collected, and the failure to apply the proceeds from the LCs as well as the net rents, raise genuine issue(s) of material facts as to whether Travelers breached its covenant of good faith and fair dealing. The motion for summary judgment is denied as to count ten.
In conclusion, the court denies the defendant's motion for summary judgment with respect to all eleven counts of the plaintiff's revised complaint.
LAWRENCE L. HAUSER, JUDGE CT Page 5284-BBB