[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was originally instituted in 1997 by the Savings Bank of Rockville (the "Bank") against Sharon Wielgos seeking reformation of a note that Wielgos gave the Bank, collection on that note, and for unjust enrichment. The Bank claimed that in 1987 it committed to loan Wielgos $94,000 at 8.875% to be repaid within fifteen years. The note was secured by a mortgage on Wielgos' home. At the closing, however, the note executed by Wielgos provided for payments that would amortize the loan over twenty-five rather than fifteen years. This error was not discovered by the parties until 1994. In its action, the Bank sought a reformation of the note to reflect the payments necessary to amortize the loan over fifteen years, and damages for Wielgos' failure to make the agreed upon payments and unjust enrichment. Wielgos counterclaimed, claiming the Bank had violated the Truth In Lending Act ("TILA"), unjust enrichment, negligence, reformation and promissory estoppel. In 1999 Wielgos refinanced her home and paid off the Bank's note. The Bank then withdrew its complaint.
Trial on Wielgos' counterclaim commenced on May 23, 2001. After Wielgos rested and the Bank had begun its defense on May 24th, the Bank filed a Motion to Dismiss the counts of the counterclaim claiming a violation of the TILA, unjust enrichment, reformation and promissory estoppel on the grounds that the court lacked subject matter jurisdiction to proceed on these counts because the TILA claim was barred by the statute of limitations and the other counts were moot since Wielgos had paid off the Bank's note. Upon receipt of the Bank's Motion to Dismiss, the court suspended the trial for the purpose of resolving the motion to dismiss before proceeding further. See, Salmon v. Dept. of Public Health,58 Conn. App. 642, 649 (2000). By Memorandum of Decision dated June 29, 2001, the court dismissed the First Count of the Counterclaim which claimed a violation of the TILA on the ground that the action was not brought within the one year statute of limitations provided for in the Act. The Court also dismissed the Fourth Count of the Counterclaim seeking reformation of the note as moot since the note had been paid. Trial on the remaining counts of Wielgos' counterclaim, namely, the Second Count claiming unjust enrichment, the Third Count claiming negligence, and the Fifth Count claiming promissory estoppel, reconvened on August 7, 2001 and testimony was completed on that date. Post trial briefs were filed on September 14, 2001. CT Page 16883
The facts regarding this matter are relatively simple. Much of the testimony focused on the computation of damages. On March 17, 1987 Wielgos applied to the Bank for a residential loan in the amount of $94,000 at the rate of 8 7/8% payable over a period of fifteen years. The application sets forth the monthly principal and interest payment as $946.44. This figure was supplied by the loan officer who took the application and it was discussed with Wielgos. By letter dated May 4, 1987 the Bank provided her with a TILA disclosure statement and a commitment letter. The disclosure statement provided that her payments would be $946.43 per month for a period of 179 months and one final payment of $947.46. The commitment letter stated that her payments would be $780.82 per month. Wielgos did not notice the discrepancy between the disclosure statement and the commitment letter. Wielgos signed both documents on May 6, 1987 and returned them to the Bank. At the closing on June 10, 1987 the note Wielgos signed, prepared by the Bank's attorney pursuant to the Bank's instructions, provided for repayment to the Bank of the amount of $94,000 at 8.875% payable commencing August 1, 1987 and ending July 1, 2002 at the rate of $780.82 per month. From that time on Wielgos was billed $780.82 per month by the Bank.
In 1994 Wielgos went to the Bank to inquire about refinancing because interest rates had dropped. In her discussions with a Bank employee Wielgos discovered that refinancing would not reduce her payments. She questioned why this would be, and the mortgage officer checked and found that the payments she was currently making on her existing mortgage loan were based on a twenty-five rather than a fifteen year repayment schedule. At that time the Bank readily admitted it had committed an error when the loan was processed in 1987. Subsequent to the discovery that, payments would not pay the loan off within fifteen years, Wielgos did not increase her payments but continued to pay only $780.82 per month. She attempted to resolve this matter with the Bank, but she wanted the Bank to agree to a resolution that would have her mortgage paid off in fifteen years, that is, by July 2002. Since the matter could not be resolved, the Bank instituted this suit in 1997. In 1999 Wielgos refinanced and paid the note to the Bank.
In the Second Count of her counterclaim, Wielgos claims unjust enrichment in that the Bank has collected more interest from her than she would have paid if the loan had been properly amortized for fifteen years at eight and seven eights percent.
 However denominated, a claim for unjust enrichment has broad dimensions. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 CT Page 16884 Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Franks v. Lockwood, 146 Conn. 273, 278, 150 A.2d 215 [1959]; Schleicher v. Schleicher, 120 Conn. 528, 534, 182 A. 162 [1935]. Connecticut National Bank v. Chapman, 153 Conn. 393, 399, 216 A.2d 814
[1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. Cecio Bros., Inc. v. Greenwich, [supra, 156 Conn. 564-65]." (Internal quotation marks omitted.) Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246, 287 A.2d 379 (1971); Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282, 649 A.2d 518 (1994).
Meaney v. Connecticut Hospital Assn., Inc., 250 Conn. 500, 511-512 (1999).
Wielgos claims that the Bank benefitted from the increased interest she paid because her loan was amortized over twenty-five rather than fifteen years. She also claims that she suffered a detriment in the form of a loss of equity in her home because of a reduction in the amount of principal she paid. Although Wielgos did pay the Bank more interest than she would have if she had paid the loan on a fifteen year schedule, she also had the benefit of the principal that she retained during that time. She had the benefit of the money she did not pay to the Bank in the form of the approximately $165 per month less (the difference between $946 and $780) that she paid monthly to the Bank than what was originally contemplated in her loan application.
Dr. Steven Shapiro, Wielgos' expert, claimed that Wielgos suffered a loss of equity of almost $42,000 representing the difference between the principal she owed in 1999 when she paid off her loan and the principal amount she would have had to pay if she had made the higher payments. Yet neither he nor any other witness offered any evidence regarding the value of Wielgos' property and whether, in fact, the equity in her home has been effected simply by the decrease in the principal due on her mortgage loan or by other factors, such as a decrease in the home's value, as well. CT Page 16885
In addition, Wielgos had the use of the money not repaid to the Bank earlier because of the longer amortization schedule. The Bank's expert, Brian McAnneny, calculated that Wielgos would have a total of $19,190 as of July of 1994, if interest on the $165 per month was calculated at the same rate as the mortgage, and $15,813 if calculated at the Bank's passbook savings rate. But once again, these are theoretical numbers, as is Wielgos's claim of loss of equity, since Wielgos could have made much more or much less if her funds were invested in a different manner. In any event, as of 1999, the total amount of money not paid by Wielgos to the Bank of approximately $165 per month was $23,760, not considering any interest. Therefore, any loss in equity by Wielgos could have been offset by the money she retained and the interest she could have earned on that money.
An unjust enrichment claim has three basic requirements: (1) that the defendant was benefitted, (2) that the defendant unjustly did not pay the plaintiff for the benefit, and (3) that the failure of payment was to the plaintiff's detriment. Paulsen v. Kronberg, 66 Conn. App. 876, 878
(2001). Here the Bank did benefit from the increased interest it received from Wielgos because of the extended amortization of her loan. Yet at the same time Wielgos enjoyed the use of the funds that remained unpaid to the Bank for that longer period. Thus any benefit to the Bank was not to Wielgos' detriment. Therefore Wielgos cannot prevail on her claim of unjust enrichment.
As to the Third Count of the counterclaim which alleges the Bank's negligence, the Bank claims that this claim is barred by the statute of limitations. Wielgos claims that the statute, Conn. Gen. Stat. §52-584, allows a counterclaim to be interposed anytime before the pleadings are finally closed. Conn. Gen. Stat. § 52-584 sets forth the statute of limitations regarding actions "to recover damages for injury to the person, or real or personal property, caused by negligence, or reckless or wanton misconduct, or by malpractice." This action does not come within the terms of this statute. The original action by the Bank to which Wielgos interposed her counterclaim was an action for reformation of the note, collection on the note and for unjust enrichment. Where the action does not come within the terms of the statute, the exception does not apply. McKosky v. Plastech Corporation, No. 426036,2001 Ct. Sup. 7547 (Jun. 13, 2001) (statutory exception does not apply where original action in which counterclaim was interposed was action asserting statutory wage rights, breach of implied contract, and unjust enrichment.); Kenyon Oil v. Milo's Service Station, No. X06-CV99-0161338, S 2000 Ct. Sup. 12457 (Oct. 5, 2000) (statutory exception does not allow for a counterclaim for personal injury or property damage in a contract/collection action.) CT Page 16886
The statute of limitations applies to a counter-claim as it does to an independent action. Consolidated Motor Lines v. M M Trans. Co.,128 Conn. 107, 108 (1941). Thus the three year statute of limitations applicable to negligence actions contained in Conn. Gen. Stat. § 52-584
applies to Wielgos' counterclaim. The Bank's error occurred in 1987 and Wielgos became aware of the error in 1994. Her counterclaim was not brought until 1998, more than three years later. Wielgos claims that the Bank's continued course of conduct of sending her bills for the incorrectly amortized mortgage tolled the statute of limitations. Yet the Bank's mistake was complete when the note, with the erroneous payment amounts, was signed. The Bank had no choice but to send Wielgos bills consistent with the note. It could not unilaterally amend the terms of the note. "The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete, such as medical malpractice, rather than one where the situation cannot change, such as legal malpractice arising from negligent drafting of the written word."Sanborn v. Greenwald, 39 Conn. App. 289, 297-298 (1995).
Wielgos also claims, citing Fichera v. Mine Hill Corporation,207 Conn. 204, 209 (1988), that the later wrongful act of the Bank in not resolving the error when it came to its attention, served to toll the statute of limitations. In Fichera the court stated:
 To support a finding of a "continuing course of conduct" that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. Where we have upheld a finding that a duty continued to exist after the cessation of the "act omission" relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. See Giglio v. Connecticut Light Peer Co., supra, 242 ("repeated instructions and advice given to the plaintiff by the defendant" concerning a furnace it had previously converted and left in a defective condition); Giambozi v. Peters, 127 Conn. 380, 385, 16 A.2d 833 (1940) ("[w]hen . . . injurious consequences arise from a course of treatment [by a physician], the statute does not begin to run until the treatment is terminated"); cf. Handler v. Remington Arms Co., supra (duty to warn of CT Page 16887 danger of defective cartridge, "an inherently dangerous article", held to continue in existence until time of injury).
Fichera v. Mine Hill Corporation, Id., 207 Conn. at 210.
But the court noted there that where the defendant had failed to fulfill its promise to construct various improvements on land of the defendants reserved as a recreation area, "[s]uch a contractual relationship, however, does not create a fiduciary obligation that might have imposed upon the defendants as the perpetrators of a fraud the continuing duty to disclose their prior lack of candor to the plaintiffs." Id.
Here the Bank's contractual relationship with Wielgos did not require that they remedy, in a manner she chose, the mistake in the note when it was discovered by both parties seven years later. Wielgos' claim that the "Bank's wilful neglect to resolve the situation amicably and in a fair and reasonable manner relative to Ms. Wielgos' situation, upon the discovery of the Bank's admitted error, as well as the Bank's lawsuit against Ms. Wielgos initiating this action, constituted the type of wrongful conduct and was sufficiently related to the prior error to support the existence of a continuing duty" is unfounded. Wielgos' Post Trial Brief, p. 4. The Bank's failure to resolve this matter in the manner Wielgos' chose does not constitute wrongful conduct such as to toll the statute of limitations. It was clear that the Bank had attempted to resolve this mater in a fair manner, short of litigation, but Wielgos had refused. Wielgos wanted her loan paid in full in fifteen rather than twenty-five years which would have required the Bank to forgive a large amount of the principal she still owed. Wielgos would have had the bank bear the full burden of the mistake which she, in the exercise of due diligence, could have discovered much sooner. Therefore the Third Count of her counterclaim is barred by the statute of limitations.
In the Fifth Count of the counterclaim Wielgos claims promissory estoppel. Wielgos claims damages for the failure of the Bank to fulfill its promise to make her a loan which would fully amortize over fifteen years. "Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise." Finley v. Aetna Life Casualty Co.,202 Conn. 190, 205 (1987) (citations omitted).
 "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say CT Page 16888 something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. . . . Connecticut National Bank v. Voog, 233 Conn. 352, 366, 659 A.2d 172 (1995); see also D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, [supra, 213]." (Internal quotation marks omitted.) Chotkowski v. State, 240 Conn. 246, 268, 690 A.2d 368 (1997).
Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152,162-163 (1998).
Here the Bank's initial papers, the commitment letter and the disclosure form, which must be viewed as the Bank's representations to Wielgos, were conflicting. Yet Wielgos made no attempt to ascertain the reason for the discrepancy and signed both documents and returned them to the Bank without question. Nor did Wielgos inquire during the seven years she paid the mortgage why her principal balance was not decreasing at a greater rate. In any event, the Bank lived up to the essential elements of their promise, they loaned Wielgos $94,000 at the rate of 8 7/8%. Although the payments set did not pay the loan off within fifteen years as she wanted and as the Bank had intended, there was no prepayment penalty provided in the note so that Wielgos could have repaid the note at any time prior to the expiration of the fifteen year period. Therefore Wielgos cannot prevail on her claim of promissory estoppel.
Wielgos seeks to avail herself of the equitable powers of the court in obtaining a judgment against the Bank in this matter based on unjust enrichment and promissory estoppel, the only claims the court has considered on the merits. "Equity is `[j]ustice administered according to fairness . . . The term "equity" denotes the object and habit of fairness, justness, and right dealing which would regulate the intercourse of men with men . . . [and] taken into consideration fairness to both the plaintiff and defendant." Krasowski v. Fontanella,51 Conn. App. 186, 199, cert denied, 247 Conn. 961 (1998).
Equity can be used to remedy an innocent mistake, as is the situation here, where the failure to do so would allow one party to enrich himself unjustly at the expense of another. Connecticut National Bank v.Chapman, 153 Conn. 393, 398 (1966). Here both parties benefitted from the CT Page 16889 mistake made, Wielgos made smaller mortgage payments and had the use of the additional funds she did not pay the bank, and the bank received additional interest from Wielgos. Neither party benefitted to the detriment of the other such that equity should intervene to remedy the consequences of the parties' mistake. As Wielgos points out, quoting Judge Cardozo, "Equity does not act for every shadowy or insubstantial wrong." Post Trial Brief, p. 16.
Judgment shall enter for the Savings Bank of Rockville on the counterclaim.
Scholl, J.